In the Matter of the Petition of THE ARGUS COMPANY et al.;
WILLIAM R. CASSIDY et al., Respondents, *v.* JAMES H.
MANNING et al., Appellants.

Under the provision of the General Corporation Act (§ 27, chap. 687, Laws
of 1892) making it the duty of the Supreme Court, upon application of
"any person or corporation" aggrieved by or complaining of a corporate
election, to summarily inquire into the matter, the fact that another
party is joined, without authority, as petitioner with a stockholder does
not affect the right of the latter to have his petition heard.

An order to show cause in proceedings instituted under said provision may
be granted by a justice of the Supreme Court out of court.

Such an order may be made returnable at a Special Term held with a
Circuit.   The proceeding is not "a contested motion" within the mean-
ing of the Supreme Court rule (38) prohibiting the noticing of contested
motions or the bringing of them to a hearing at a Special Term held
at the same time and place with a Circuit.

*It seems* the rule applies to those incidental applications which are made
during the progress of an action or special proceeding, not to an appli-
cation which is the foundation of a statutory remedy.

The rule, however, simply prescribes a rule of conduct for the guidance
of attorneys; it does not exclude a judge at Special Term who is engaged
at the same time in holding a Circuit from entertaining a motion noticed
for such term, if in his judgment the circumstances and the rights and
interests involved render it proper to do so.

*It seems*, even if a doubt exists as to the construction of one of the rules
of practice of the Supreme Court, where it has been determined by that
court, both at Special and General Term, this court will not review its
determination.

Where a candidate at a corporate election receives a majority of the legal
votes cast, the receipt of illegal votes in his favor does not defeat his
election.

An agreement between the stockholders of a corporation that no one of
them will sell, assign or dispose of his stock, without having first given
the other parties to the agreement an opportunity to purchase, does not
disable a party from transferring a legal title to his stock without the
consent of the other parties and in violation of the agreement, and this
although the transferee was cognizant of the agreement at the time of
the transfer.

The enforcement of specific performance of such an agreement by a court
of equity rests in the discretion of the court; it may not be demanded as
a right.

The fact that the transferee holds the stock subject to the enforcement of
the equitable remedy in no way interferes with his legal title, nor does it

preclude the corporation from treating him as, and according to him all the rights of, a stockholder, including the right to vote upon the stock at a stockholders' meeting.

An agreement between stockholders such as above specified contained a provision "that whenever either party shall have disposed of his or her shares" the agreement shall terminate. C., one of the parties thereto, who owned 150 shares, indorsed on a certificate of thirty shares a transfer thereof to her son, and at her request an entry was made upon the stock book of the company stating the transfer, and the dividends were thereafter paid to the son. The original certificate was retained by C., and no formal transfer was made on the company books. C. subsequently gave the remaining 120 shares to two sons, to whom the shares were transferred on the book, and new certificates issued to them. *Held*, that while the clause in the agreement as to the termination thereof on disposition by one of the parties of all of his or her shares meant a disposition pursuant to its provisions, a transfer made with the consent of the other parties gave effect to the provision, and as it appeared that the other parties were at the time of such transfers directors, they must be assumed to have known of and assented to the entries on the stock book, and so that the shares transferred were liberated from the agreement.

The corporation had three directors. M., one of them, was its president. S., who had purchased 100 shares of its stock, presented the certificate therefor, with the transfer indorsed thereon, to M., and requested that the stock be transferred on the company's book. On March thirtieth M. refused to permit the transfer, and early in the morning of the next day left the city where the office of the corporation was located and where its business was carried on. An election of directors was to be held April twelfth. The stock book of the corporation was in a private drawer in the safe of the company; the drawer was locked, and M. took the key away with him. On the afternoon of March thirty-first the other two directors met and issued a notice for a directors' meeting to be held the same evening. Notice was served upon M. by leaving it at his residence with a servant, up to which time the co-directors had no knowledge of his absence. The meeting was held pursuant to the call, said two directors being present, and upon request that a transfer of said stock be made, they, by resolution, adopted a new stock and minute book, entered therein among the other stockholders the name S. as the holder of 100 shares, and issued to him a certificate upon his surrender of the old certificate. This action was ratified at another directors' meeting held April first. In proceedings under said act it was claimed that the action in adopting a new stock book was invalid, for the reason that the notice of the meetings did not specify the purpose for which they were called. *Held*, that in the absence of any provision in the by-laws of the company requiring such a specification, the objection was untenable; that a general notice was all

that was required for a valid meeting of directors to determine matters pertaining to the ordinary business affairs of the corporation.

On April first an injunction order was issued in an action brought by M. and another enjoining S. and the sons of C. from voting, either in person or by proxy, on any shares of stock then registered in their names on the company book which had not been owned by them, or either of them, for ten days preceding April twelfth, and also restraining inspectors of election or their substitutes, appointed at said meeting of March thirty-first (who were made defendants), from receiving any votes on said shares; also restraining defendants from using, at the election of April twelfth, any stock or scrip book prepared pursuant to the resolutions adopted at said meetings of March thirty-first and April first. This order was served on the defendants before the election. Upon the organization of the meeting for the election, new inspectors were chosen, the transferees of said stock offered to vote thereon, the vote was challenged, but was received and counted. It appeared that the new stock book was not used or referred to at the meeting. *Held*, that no violation of the injunction was shown, as the stock so voted on was transferred more than ten days prior to the election, and as it did not appear that the new stock book was used; that, being prohibited from using said book, the inspectors were placed in the same position as if it could not be found, and so the provision of said Corporation Act (§ 20) providing that if the right to vote at any such meeting shall be challenged, the inspectors shall require the books, including the stock book, "if they can be had," to be produced as evidence of the right of the persons challenged to vote, did not apply; and that the election was valid.

The strict rules which govern the reception of evidence in civil actions are not applicable to such a proceeding.

(Argued June 8, 1893; decided June 27, 1893.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made May 19, 1893, which affirmed an order of Special Term in proceedings instituted under the General Corporation Act to determine who were elected directors of the Argus Company at an election held April 21, 1893.

The facts, so far as material, are stated in the opinion.

*E. Countryman* and *E. J. Meegan* for appellants. The judge or justice at Chambers could not make an order returnable in court, or shorten the time for the service of papers on application to the court. In such case, the order to show

cause must be made by the court, and not by a judge thereof or a county judge. (Code Civ. Pro. § 780; *People ex rel.* v. *Donovan*, 135 N. Y. 76.) If, however, a broader construction in this respect be given to section 780 of the Code, the power of a judge at Chambers to make an order to show cause returnable in court, must be limited to an applica, tion or proceeding " in an action " as distinguished from a special proceeding. (Code Civ. Pro. § 3333.) In any event, the order to show cause must be made returnable to, and the proceeding must be heard at a regular Special Term of the court, and not before an adjourned term held at Chambers, or a term held in connection with a Circuit. (Code Civ. Pro. § 17; *In re Moore*, 108 N. Y. 280.) There was no lawful excuse given for the order to show cause or for limiting the time for notice of the application. (*McCarthy* v. *Peake*, 9 Abb. Pr. 164; 18 How. Pr. 138.) There was no authority alleged or shown to make the Argus Company a petitioner in this matter. (*American Ins. Co.* v. *Oakley*, 9 Paige, 497; *Mumford* v. *Hawkins*, 5 Den. 355; *Potter Case*, 44 Hun, 368; 118 N. Y. 684.) The 100 shares of Worthington stock voted in the name of Speer at the snap meeting was improperly received and counted, and was properly rejected when offered at the regular meeting of stockholders. (*Brown* v. *P. M. Co.*, 5 Blatch. 525; *People* v. *Sturtevant*, 9 N. Y. 263; *Daly* v. *Amberg*, 126 id. 490; *People* v. *Dwyer*, 90 id. 402, 409; *Mayor, etc.*, v. *F. Co.*, 64 id. 623; *Stimson* v. *Putnam*, 41 Vt. 238; *Willesby* v. *Morrington*, 11 Beav. 181.) The first two meetings were called on two or three hours' notice, when Cassidy and Johnson were well aware that Manning, the president, was absent from home; and although, as appears from what took place, they were not called to enable them to carry on the ordinary business of the company, there was no reference to or specification of the purpose of the meetings in any of the notices served. The notices were not reasonable, under the circumstances, in point of time, and manifestly were not intended to give the president an opportunity to attend the meetings. The notices were also defect-

ive and insufficient, because they contained no indication of the purpose for which the meetings were called. (*Ins. Co.* v. *Wescott*, 14 Gray, 440; *A.*, *etc.*, *Co.* v. *Mason*, 5 R. I. 463; *Downs Case*, 149 Mass. 135; *A. T. Works* v. *B. M. Co.*, 139 id. 5; *Harding* v. *Vandewater*, 40 Col. 78; *Stevens Case*, 12 Vt. 688; *Wiggin Case*, 8 Metc. 301; *Stow* v. *Wyse*, 7 Conn. 214; *Tuttle Case*, 35 Mich. 247; *Pike Co.* v. *Rowland*, 94 Penn. 238.) The forty shares of stock standing in the name of John P. Cassidy, as held by Judge PARKER, were illegally and improperly received and counted by the inspectors at the snap meeting, and were properly rejected at the other meeting. (Laws of 1892, chap. 687, § 21; *Geiger* v. *Bowles*, 1 T. & C. 129.) There has been no valid sale, as against the holders of the Manning shares, of any of the Cassidy or Worthington stock, amounting to 250 shares. (*Havemyer Case*, 11 J. & S. 507; 86 N. Y. 618; *Quincy* v. *White*, 63 id. 370, 383; *Faulks* v. *Yates*, 57 Ill. 416.)   The point that the only remedy for a breach of the contract is an action for damages, is untenable.   (2 Beach on Eq. Juris. § 636; *Johnson* v. *Brooks*, 93 N. Y. 337; *Leitch* v. *Wells*, 48 N. Y. 586; *C. N. Bank* v. *Colwell*, 132 id. 250.) The Special Term erred in sustaining the rulings of the referee, excluding evidence offered on behalf of the appellants, bearing upon the question of title to, or ownership of the stock, the right to vote upon which was challenged at the election. (*Smith Case*, 7 Lans. 317; *Brisbane Case*, 25 Hun, 438; 94 N. Y. 204; *Schuyler Case*, 34 id. 30, 83; *Cushman Case*, 76 id. 371.) The method adopted of voting all the Cassidy stock by proxy was illegal and fraudulent under the circumstances. (Laws of 1892, chap. 687, § 22.) It is immaterial which meeting or election, the snap or the other, be regarded as regular or legitimate. In either event the Worthington stock of 100 shares, and the John P. Cassidy stock of forty shares, or 140 shares, at least, must be held not entitled to be voted upon or received, and, therefore, regarded as not voted for the purposes of this proceeding. And in such a case the rule is well settled that the court will not order a new election, but declare the persons receiving a majority of the legal votes

duly elected. (*Ex parte Desoity*, 1 Wend. 98 ; *Vandenburgh Case*, 29 Hun, 349 ; *In re P. P. Co.*, 33 How. Pr. 111, 112, 115.)

*Matthew Hale, R. A. Parmenter* and *Geo. L. Stedman* for respondents. The order of April twenty-eighth was not appealable. (Laws of 1892, chap. 687, § 27.) The sale and transfer of the Worthington stock were valid. (*Fisher* v. *Bush*, 30 Hun, 641 ; *Ross* v. *Sodgbeer*, 21 Wend. 166 ; *Sargent* v. *F. Ins. Co.*, 8 Pick. 90 ; *Moore* v. *Bank of Commerce*, 52 Mo. 377 ; *Driscoll* v. *W. Co.*, 59 N. Y. 96 ; Pom. on Spec. Perf. §§ 175, 180, 182, 280, 283, 287.) The objection based upon the assumed fact that the Worthington stock had not been transferred to Speer on the books of the company, is without foundation. (*In re S. V. R. R. Co.*, 12 Abb. [N. S.] 394 ; *Isham* v. *Buckingham*, 49 N. Y. 216 ; *Robinson* v. *N. Bank*, 95 id. 637 ; *C. N. Bank* v. *Colwell*, 132 id. 250, 256.) The objections to the votes offered upon the Cassidy stock were without foundation. (*In re Newcomb*, 42 N. Y. S. R. 442.) The power of attorney of John P. Cassidy was sufficient to authorize William R. Cassidy to give a proxy for voting upon the stock. (*Craighead* v. *Peterson*, 72 N. Y. 279.) The portion of the order appealed from which required the appellants to deliver to the directors adjudged to have been elected, all the corporate property of the Argus Company, and to refrain and desist from interfering with the said property in any way or manner was within the jurisdiction of the court and was proper. (*In re P. P. Co.*, 36 How. Pr. 105.) The preliminary objections of the contestants were properly overruled. (Laws of 1892, chap. 687, § 27 ; *People ex rel.* v. *Nichols*, 79 N. Y. 582 ; *Thompson* v. *E. R. Co.*, 9 Abb. [N. S.] 233 ; *Palmer* v. *N. L. Assn.*, 138 N. Y. 265.) There was no error in the rulings of the referee, or of the Special Term, on which appellants were prejudiced. (*Barnes* v. *Brown*, 80 N. Y. 536.)

*William N. Cohen* for respondents. The order of the General Term is final and no appeal lies to this court. (Laws

of 1892, chap. 687, § 27; *In re U. S. M., K. & C. Co.*, 115 N. Y. 176.) The order of April 28, 1893, was properly made at Special Term. (*People* v. *Nichols*, 79 N. Y. 582; Code Civ. Pro. §§ 239, 3333; *Lathrop* v. *Clapp*, 40 N. Y. 328; *In re Jetter*, 78 id. 605; *People* v. *Bank of Rochester*, 96 id. 32.) The 100 votes cast by William McM. Speer were properly received. (*In re L. I. R. R. Co.*, 19 Wend. 37; *Strong* v. *Smith*, 15 Hun, 222; *Fischer* v. *Bush*, 35 id. 641; *Morris C. Co.* v. *B. C. Co.*, 68 Penn. St. 175; Cook on Stockholders, § 326; *Miller* v. *Townsend*, 109 Mass. 115; *McNeil* v. *Bank*, 46 N. Y. 325; *R. Co.* v. *Schuyler*, 34 id. 30, 80; *Johnson* v. *Laflin*, 103 U. S. 800; Code Civ. Pro. § 14; *Fischer* v. *Raab*, 81 N. Y. 235; High on Inj. 1121; *People* v. *Sturtevant*, 9 N. Y. 263; *Platt* v. *Woodruff*, 61 id. 378; *Callan* v. *McDaniel*, 72 Ala. 96.) Votes were properly received for 110 shares of stock owned by William R. Cassidy. (*In re Newcomb*, 42 N. Y. S. R. 442; *Wheeler* v. *Miller*, 90 N. Y. 353.)

ANDREWS, Ch. J. By the order of Judge PARKER, made at the Ulster Circuit and Special Term on the 28th day of April, 1893, it was adjudged that William H. Johnson, William R. Cassidy and William McM. Speer, were duly elected directors of the Argus Company at the meeting of stockholders held on the 14th day of April, 1893, and that James H. Manning, Frederick C. Manning and John A. Delehanty, who claimed to have been elected directors at said meeting, were not so elected, and they were enjoined from acting as directors, and required to deliver to the persons so adjudged to have been elected the property of the Argus Company and control of its affairs, and to refrain from any interference therewith. The General Term, for the purpose of facilitating the final disposition of the controversy, promptly affirmed the order of the Special Term, and this appeal was taken from the order of affirmance. The matter has been fully argued in this court, and it remains to state the conclusions reached upon

the questions presented.   The proceeding which resulted in the order of the Special Term was instituted under sec. 27 of the General Corporation Law of 1892.   That section, which is in substance a re-enactment of a provision in the Revised Statutes (1 Rev. St. 603, § 5), makes it the duty of the Supreme Court, upon the application of " any person or corporation " aggrieved by, or complaining of any corporate election or any proceeding, act or matter touching the same, upon notice to the adverse party or to those to be affected thereby, " forthwith and in a summary way " to have the affidavits, proofs and allegations of the parties, or otherwise inquire into the matters or causes of complaint and to establish the election or order a new election, or make such order and give such relief as right and justice may require.

Before considering the merits of the controversy there are certain preliminary questions raised respecting the procedure which should be determined.   The proceeding was commenced by verified petition addressed to the Supreme Court, purporting to have been made in behalf of the Argus Company and by William H. Johnson and William R. Cassidy individually, setting forth alleged facts relating to the election of April 12, 1893, resulting as was claimed in the election of William H. Johnson, William R. Cassidy and William McM. Speer as directors of the Argus Company.   The petition averred that James H. Manning, Frederick C. Manning and John A. Delehanty, claimed and pretended to have been elected directors at such meeting, and had taken possession of the property of the Argus Company, and excluded the rightful directors from the possession and control of its affairs.   It concluded by a demand for relief, establishing the election of Johnson, Cassidy and Speer as directors, and vacating and setting aside the pretended election of James H. Manning, Frederick C. Manning and John A. Delehanty.   Upon this petition, a justice of the Supreme Court in the third district, on the 2d day of April, 1893, made an order at Chambers requiring the contesting directors to show cause at a Special Term to be held at the court house at Kingston, on the 15th day of

April, 1893, why the prayer of the petition should not be granted.

Several objections to this order are made : (1) It is insisted that the Argus Company was joined as one of the petitioners without authority.   It is a sufficient answer to this objection that sec. 27 of the General Corporation Law authorizes the proceedings under that section to be taken upon the application of " any person or corporation " aggrieved.   William H. Johnson and William R. Cassidy, two of the petitioners, were stockholders in the Argus Company, and joined in the petition, and there can be no question of their right to make the application.   It cannot affect their right to have their petition heard, that another party was joined as petitioner without authority.   (2) It is insisted that the matter being one which under sec. 27 is to be heard and decided by a judge in court, an order to show cause could only be granted by a court, and could not be granted by a judge out of court.   An order to show cause is a means of shortening the usual time of notice of a motion prescribed by the General Rules of Practice.   Section 780 of the Code declares that a notice of eight days shall be given of a motion or other proceeding in an action, before a court or judge, where notice is necessary and where special provision is not otherwise made by law, " unless the court or a judge thereof, or a county judge," upon an affidavit showing grounds therefor, makes an order to show cause, and in the order directs that notice of less than eight days may be given.   The jurisdiction of a judge out of court to make such an order is not restrained in terms to cases where the matter to be heard may be heard out of court, and we perceive no reason in policy or in the language of the statute for annexing such a limitation of his powers. It is obvious that the existence of a power in a judge out of court to make an order shortening the usual notice to be given of a proceeding in court, may promote the administration of justice and prevent unnecessary and injurious delay.   The facts stated in the verification were sufficient to justify the granting of the order, and the discretion of the judge is not

reviewable here. (3) It is insisted that conceding the power of a judge out of court to grant an order to show cause, returnable at Special Term, nevertheless this power is subject to a restriction imposed by Rule 38 of the General Rules of Practice of the Supreme Court, which provides, subject to certain exceptions not here material, as follows : " Rule 38. Contested motions shall not be noticed or brought to a hearing at any Special Term held at the same time and place with a Circuit." The order to show cause in this case was returnable at a Special Term which was then being held in the county of Ulster, in connection with a Circuit and a Court of Oyer and Terminer duly appointed for that county. On Saturday, the 15th day of April, 1893, the day on which the order was returnable, the judge holding the Circuit and Special Term, on the petition being presented, overruled the objection now being considered and thereupon on the petition and upon affidavits in support and in opposition thereto, appointed a referee to take testimony, and adjourned the further hearing until Saturday, the 24th day of April, on which day the matter was heard on the petition, affidavits and proofs taken before the referee, and the court subsequently, on the 28th day of April, decided the case and made the order now in question.

We think the order cannot be assailed for want of power of the court to entertain jurisdiction of the proceeding under rule 38. There is much force in the suggestion that a proceeding instituted under section 27 of the General Corporation Law is not a " contested motion " within the meaning of the rule. Rule 38 may well be construed as referring alone to those incidental applications ordinarily denominated motions, which are made during the progress of an action or special proceeding after its commencement, and not as embracing an application which is the foundation of a statutory remedy.

But aside from this consideration, there is, we think, another answer to the objection made. Rule 38 must be interpreted in view of the reason upon which it rests. The object of the rule was to prevent interference with the ordinary work of a

Circuit or Court of Oyer and Terminer, by the interjection of motion business bearing no relation to cases on the calendar, and also to prevent the inconvenience to counsel of being compelled to attend a Special Term held in connection with a Circuit, upon motions in outside cases where the hearing might be delayed by the regular calendar business. Rule 38 is a rule primarily regulating the conduct of attorneys. The attorneys give notice of motions and bring them on for hearing, and rule 38 prescribes a rule of conduct for their guidance. The rule does not undertake to exclude a judge at Special Term, engaged at the same time in holding a Circuit, from entertaining a motion noticed for such term, if, in his judgment, the circumstances and the rights and interests involved render it proper that he should do so. He may refuse to hear a contested motion at such a term upon the ground that it was irregularly noticed, but if he chooses to exercise the undoubted jurisdiction of a judge holding a Special Term, whether separately or in connection with a court to dispose of any non-enumerated business appertaining to that branch of the court, and the parties are before him, the rule constitutes no limitation upon his power. Any other construction of the rule might result in serious inconvenience. It often happens that the rights of parties require a prompt determination of a question brought up by motion, and if there was an inflexible rule that the party must await the convening of a term appointed exclusively for Special Term business to bring it on, and that a judge holding a Circuit and Special Term together, could under no circumstances hear it at such term, it would be in many cases an obstruction to the administration of justice. The 27th section of the General Corporation Law, under which the proceeding was taken, requires the court " forthwith and in a summary way " to hear and dispose of the application. The election of directors of the Argus Company was for the term of a year only, and it is manifest that any considerable delay in determining the contest would contravene the purpose of the statute and continue a state of uncertainty which might be detrimental to the interests of the corporation. We think

the Special Term properly entertained the application, and even if any doubt existed as to the construction of rule 38, we should be disinclined to review a question of practice in the Supreme Court, which was determined in the first instance by the judge who granted the order to show cause, and afterwards by the judge who made the order under review, and where the General Term has affirmed the order.

The disposition of the preliminary objections brings us to a consideration of the merits of the controversy.

The sole question is, which of the contesting claimants are the lawful directors of the Argus Company. It is conceded by both parties that the stockholders' meeting held on the 12th day of April, 1893, was legally called. It was called pursuant to a resolution passed at a meeting of the directors of 1892, at which two of the three directors were present, viz., James H. Manning and William H. Johnson. They caused notice of the stockholders' meeting for the election of directors, to be duly published on the 27th of March, 1893, the day on which the resolution was passed. It is also conceded by both parties that at the stockholders' meeting three directors for the ensuing year were legally chosen. It is not claimed that the purpose of the meeting failed, or that no directors were legally elected at the meeting. The title of the rival claimants is based upon the proceedings of that meeting, each party claiming that its candidates received a majority of the legal votes cast upon that occasion. There is no question of the failure of the meeting to elect directors, or of the holding over of the directors elected in 1892. The sole point in controversy is, which of the two contesting sets of claimants received a majority of the legal votes.

The stockholders' meeting was organized by the appointment of William R. Cassidy as chairman, and the appointment of three inspectors of election. We do not understand it to be claimed that the meeting was not legally organized, although its action is criticised. The meeting proceeded to the election of directors. The stock of the Argus Company consisted of 500 shares. The whole number were

voted upon at this meeting. If all the persons who voted were entitled to vote upon the shares voted by them respectively, then all the stockholders of the Argus Company participated in this election. The vote when canvassed showed the following result: William H. Johnson and William R. Cassidy each received 310 votes, and William McM. Speer 300 votes; and James H. Manning received 200 votes, and Frederick C. Manning and John A. Delehanty each received 190 votes. In other words the Johnson directors (so called) each received at least 300 votes, and the Manning directors (so called) 190 to 200 votes each. It is obvious that if the votes cast for the Johnson directors were legal votes, or if any of them were illegal, nevertheless it appears that the legal votes cast for them exceeded 200, the highest number cast for any one of the Manning directors, the Johnson directors were elected. The receipt of illegal votes in favor of a candidate who also has received a majority of the legal votes, does not defeat his election. It is the rule of corporate elections in stock corporations that the majority of legal votes determine the election. The owners of the majority of the shares have the right to designate the directors to whom the management of the corporation shall be committed. The stockholders are the beneficial owners of the corporate property. The majority may act unwisely. But they may change the management for any reason, provided only they act within the limitations of the charter. The question now presented is purely legal, and the mass of evidence in the record, bearing upon the motive of the one party or the other, is wholly irrelevant to the case in its legal aspects. During the progress of the meeting of the stockholders first organized, a second meeting was organized in the same room, at which votes were received for directors, the largest vote being for James H. Manning, who received 200 in all. It is unnecessary further to refer to the proceedings at this second meeting, for the reason that we find no ground for questioning the regularity of the meeting first organized, and it is properly admitted by the learned counsel for the appellants

that the questions upon which he relies are raised by his objections to the proceedings of that meeting after its organization.

The 300 shares voted upon in favor of the Johnson directors included 100 shares known as the Worthington stock, which, on the 28th day of March, 1893, was sold by Lily S. Worthington, the then owner, to William McM. Speer, for the sum of $40,000, paid to her on that day. In making this purchase, William R. Cassidy acted as the agent of Speer, but his agency was not disclosed to Mrs. Worthington at the time. On receiving the purchase money Mrs. Worthington signed the printed transfer on the back of her certificate for the 100 shares and delivered the certificate to Cassidy, who filled in the blank left for the name of the transferee with the name of Speer, the real purchaser, and on the same day (March 28th) delivered the certificate and transfer to him. This 100 shares of stock was voted upon by a proxy of Speer in his name at the stockholders' meeting April 12, 1893. The vote was challenged and the right to receive this vote, which was cast for the Johnson directors, constitutes one of the principal contentions in this case. Besides this 100 shares of the Worthington stock voted upon, there was also included in the 300 votes given for the Johnson directors, 150 votes on the Cassidy stock (so called). This vote was likewise challenged, and is claimed to have been illegally received. The Cassidy stock consisted of 150 shares, which stood on the books of the Argus Company on the 27th day of March, 1893 (when the notice of the stockholders' meeting was given), in the names of the following persons: Lucie R. Cassidy, 30 shares; William R. Cassidy, 80 shares; John P. Cassidy, 40 shares; 110 shares of this stock was voted on in the name of William R. Cassidy, and 40 shares in the name of John P. Cassidy. The objections to the legality of the vote by Speer on the Worthington stock, and to the vote on the Cassidy stock, are substantially as follows:

(1) That the Worthington stock was transferred in violation of an agreement binding on Mrs. Worthington; (2) That it had not been transferred to Speer on the books of the com-

pany; (3) That the Cassidy stock had been sold to Speer, and that the vote thereon in the name of William R. or John P. Cassidy was illegal and void; (4) That there was no valid authorization from John P. Cassidy to vote upon his stock; (5) That the proceedings at the election were in violation of an injunction granted by Judge EDWARDS. These objections will be considered in the order stated.

(1) The agreement which it is claimed was violated by Mrs. Worthington was made in 1873, between Daniel Manning, Lucie R. Cassidy and J. Wesley Smith, then the owners of a large majority of the stock of the Argus Company. It is undated and was drawn by Daniel Manning, who presented it to Mrs. Cassidy for her signature directly after the death of her husband, from whom her interest in the company was derived. The agreement is in substance that neither of the parties will sell, assign or dispose of any of the stock then held or which should be subsequently acquired by him or her in the Argus Company, without having first offered and given to the other parties to the agreement an opportunity to purchase the shares " at a fair marketable price," and in case of the inability of the parties to agree upon a price, it provided that it should be fixed by arbitration. The agreement further provided that " whenever either party shall have disposed of his or her shares at that time owned by him or her this agreement is to terminate," and the concluding clause declared that the agreement " is to be of force and binding upon and to the heirs, executors, administrators, devisees and legatees of the parties hereto." The 100 shares held by Mrs. Worthington prior to the sale to Speer on the 28th day of April, 1893, came to her from her father, J. Wesley Smith, one of the parties to the agreement, on his death in 1886, and in 1887 were transferred to her on the books of the Argus Company and a new certificate issued in her name. Assuming that the agreement of 1873 was binding upon Mrs. Worthington, as heir (next of kin), or as legatee of her father, and that her sale of the stock to Speer was in violation of the agree-

ment, this fact is immaterial in this controversy unless she was by force of the agreement disabled from transferring the stock, or unless Speer, who had notice of the agreement when he purchased, acquired no title as against the Manning interest and could assert no rights founded upon such purchase as a stockholder in the Argus Company. This contention cannot be sustained in either aspect. Mrs. Worthington was the legal owner of the shares. The right of disposition of property is an incident to ownership. The transfer to Speer vested in him the legal title to the shares, although they were not transferred on the books of the company. The recital in the certificate that the stock was " transferable only on the books of said company by her or her attorneys on the surrender of the certificate," regulated the relation between the holder of the certificate and the corporation, but did not operate to prevent the vesting of the legal title to the shares in Speer upon the transfer and assignment by Mrs. Worthington. (*Leitch* v. *Wells*, 48 N. Y. 586; *Chemical Bank* v. *Colwell*, 132 id. 250.) The qualified non-alienability of the stock sought to be imposed upon it by the agreement of 1873, rested in contract only, and in no respect disabled Mrs. Worthington from vesting the legal title by transfer in another, whether with or without the consent of the other parties to the agreement, or whether or not it was made in disregard of its provisions. The agreement was in its character executory, and for its violation the other parties could resort to such remedy as the law affords upon the breach of a contract by either party, which in ordinary cases is an action for damages. It is urged that in this case, considering the nature and object of the agreement of 1873, the remedy by an action for damages would be inadequate, and that the court may in such case specifically enforce its observance and interfere to prevent either party from violating it, and that a purchaser with notice is subject to the same equity. The jurisdiction of a court of equity to enforce specific performance of a contract relating to personal property, though rarely exerted, cannot be denied and

may be exercised " where compensation in damages would not furnish a complete and satisfactory remedy." (*Johnson* v. *Brooks*, 93 N. Y. 337.)    But the granting of this relief rests in the sound discretion of the court and cannot be demanded as a right.  Speer having acquired the legal title to the stock by transfer from Mrs. Worthington, it is not perceived how a court of equity could give any relief unless by compelling him to transfer the stock to the other parties entitled to the benefit of the agreement, upon being reimbursed the sum expended in its purchase.  But it is a decisive answer to the objection now being considered that, assuming upon the facts presented the court could, upon the application of the other parties to the agreement or their representatives, enforce specific performance or compel Speer to transfer the stock to the holders of the Manning interest, no such equity has been enforced.   The fact that Speer may have held the stock subject to the enforcement of the equitable remedy, in no way interferes with his legal title, nor did it preclude the corporation from treating him as a stockholder or from according to him all the rights of a stockholder, so long as the company was not prevented from so doing by the judgment or process of the court.   The corporation was not a party to the agreement of 1873.   The agreement is between individual stockholders only.  They may not elect to seek a remedy in equity.   The court upon application might refuse in its discretion to grant equitable relief.   The record shows that transfers of stock have been made from time to time by parties to the agreement, without any reference to its provisions; that the agreement remained in the possession of Daniel Manning from the time of its execution until his death, and that its existence was not known to his sons until about two years prior to the commencement of this proceeding, and that Mrs. Cassidy had but a faint recollection of its execution. The claim is made by the petitioners that the agreement had been disregarded and practically abandoned by the parties to it.   We refer to these claims made by the petitioners to show

the variety of considerations which might be presented to a court of equity to influence its action in granting or withholding the remedy of specific performance.

The objection to Speer's right to vote on the Worthington stock has so far been considered on the assumption that the agreement of 1873 was in force at the time of his purchase. But another conclusive answer to the defense, based on the agreement, is that the agreement had been terminated pursuant to a provision in the agreement itself prior to the purchase of the Worthington stock by Speer. The event provided for in the clause in the agreement "that whenever either party shall have disposed of his or her shares at that time owned or held by him or her, this agreement is to terminate," had happened by the transfer by Mrs. Cassidy, one of the parties to the agreement, of all her shares in the Argus Company, with the consent or acquiescence of the other parties thereto, or their representatives, on or before March 27, 1888, and the agreement was thereby terminated and all parties released from its obligation. When the agreement was made, Mrs. Cassidy was the owner of 150 shares of the stock, 30 of which were represented by a separate certificate issued in her name. In 1881 she gave these 30 shares to her son, William R. Cassidy. Mrs. Cassidy indorsed on the certificate a transfer of the shares to her son William, and at her request, as the evidence tends to show, an entry was made on the stock book of the Argus Company referring to these shares as follows: "Transferred to William R. Cassidy, March 29, 1881," and from that date the dividends were paid to the son. The original certificate issued to Mrs. Cassidy was retained by her and the stock has never been formally transferred to William R. Cassidy on the books of the Argus Company. There were associations connected with the origin of Mrs. Cassidy's title to the 30 shares, and the issuing of the certificate, by reason of which she desired to retain the scrip in her possession, but the evidence that she intended to part with the ownership of the shares and vest the beneficial title in her son, is full and com-

plete, and the circumstances relied upon to show the contrary are not sufficient to overcome the clear and positive evidence of Mrs. Cassidy and her son, the written assignment, the entry in the books of the company and the subsequent recognition by the company of the son as the owner of the shares. In March, 1888, Mrs. Cassidy gave her remaining 120 shares to her two sons, William R. Cassidy and John P. Cassidy, 80 shares to William R., and 40 shares to John P. The shares were transferred to the sons on the books of the company in the same year and new certificates issued in their names. As the result of these several transactions Mrs. Cassidy in March, 1888, had disposed of all her shares in the Argus Company, and by the terms of the agreement of 1873, the agreement was thereby terminated. It is undoubtedly true that the clause providing that a disposition by either of the parties to the agreement of all the shares held by him or her should terminate the agreement, means a disposition pursuant to its provisions. It was not intended to provide that a party transferring his shares in violation of the agreeement should thereby be released from its obligations. But a transfer made with the consent of the other parties, express or implied, would give effect to the condition. In 1881, when the 30 shares were transferred by Mrs. Cassidy, Daniel Manning and J. Wesley Smith, the other parties to the agreement were directors in the company, and must be assumed to have known and consented to the entry in the stock book, and the transfers of 1888 were made on the books of the company, of which all the persons interested are presumed to have had notice. The shares transferred by Mrs. Cassidy to her sons were upon the transfer liberated from the operation of the agreement. The sons did not take in the capacity of "heirs, executors, administrators, devisees or legatees," and the transfers having been made with the implied consent of the other parties to the agreement, the shares in their hands were not bound by its restrictions. There was no reservation in the agreement of a

right in the parties thereto by a transaction *inter vivos* to transfer the stock to the members of their respective families. The consent of the other parties to the transfer by Mrs. Cassidy of the stock to her sons, may have been influenced by the fact of this relationship, but the consent having been given, when all her shares had been transferred, the event occurred which terminated the agreement. Upon both of the. grounds stated we are of the opinion that the agreement cannot be interposed to deprive Speer of the character of a stockholder, as transferee of the Worthington stock.

(2) The objection that the Worthington stock had not been transferred to Speer on the books of the company, and that for this reason he was not entitled to vote thereon, assumes that the stock book of the Argus Company used prior to March 31, 1893, was the legal stock book of the company. In that book Mrs. Worthington appeared to be the owner of the 100 shares which on the 28th of March, 1893, she sold to Speer, and no transfer thereof to Speer appears thereon. But at a directors' meeting held on the 31st of March, 1893, a new stock book was adopted, and this action was ratified at another directors' meeting held on April 1st. The appellants assail the validity of this transaction on the ground that the meetings of March 31st and April 1st were not legally called, and that the action taken was void. It appears that Speer on the 29th day of March, 1893, the day following his purchase of the Worthington stock, presented to Mr. Manning, the president of the Argus Company, the certificate issued to Mrs. Worthington, with her transfer indorsed, and requested that the stock should be transferred to him on the books, and a new certificate issued in his name, and he referred to the approaching election to be held on the 12th of April as the reason for requesting the transfer. The president of the company requested a postponement of the matter till the following day (March 30th), and at an interview with Speer on that day refused to permit the transfer, assigning as a reason for the refusal, the agreement of 1873. Early in the morning of

March 31st, Mr. Manning left Albany for Washington. The stock book of the company was in a private drawer used by Mr. Manning, in a safe of the Argus Company, which drawer was locked, and of which Mr. Manning took with him the key. On the afternoon of the 31st of March, William R. Cassidy and William H. Johnson, two of the three directors of the company, met and issued a notice for a directors' meeting to be held the same evening, and the notice was served on Mr. Manning by leaving the same at his residence with a servant girl, who informed the person serving the notice that Mr. Manning had left the city, this being the first intimation or knowledge that his codirectors had of the fact. The meeting was held pursuant to the call, Cassidy and Johnson being present. At this meeting the directors were requested to cause a transfer to be made to Speer of the Worthington stock on the books of the company. Being unable to find the old stock book, the directors, by resolution, adopted a new stock and minute book, and proceeded to enter the names of the several stockholders of the company, with the number of shares held by them respectively, in the new stock book, and among others they entered the name of Speer as the holder of 100 shares, and issued a certificate which was delivered to him on the next day on surrender of the certificate formerly issued to Mrs. Worthington.

We do not understand that the power of the board of directors at a meeting lawfully convened, to adopt a new stock book, is denied. It is clear that such a contention, if made, could not be sustained. The adoption of a stock book in the first instance pertains to the duties of the directors of a stock corporation, and if for any reason the existing transfer book is not available for use by the directors for the making of transfers of stock, the adoption of a new stock book is incident to the original power vested in the directors. The denial of this power might result in depriving the real owner of stock of his right to participate in corporate elections. Section 29 of the Stock Corporation Law of 1892 provides that no trans-

fer of stock shall be valid for any purpose except to render
the transferee liable for debts, until it has been entered in the
stock book, and by section 20 of the General Corporation Law
the stock book is made the evidence of the right of a person
challenged to vote at a stockholders' meeting, and by the same
section it is declared that no person shall vote at such meeting
upon any stock which has not been owned by him at least ten
days next preceding. There was an exigency which justified
the adoption of a new stock book. The old stock book was not
accessible to the directors present at the meetings. The elec-
tion was to take place on the 12th of April. Mr. Manning
did not return to Albany until the evening of Sunday, April
2d, leaving less than nine business days intervening between
that date and the day appointed for the election. It is the duty
of the directors of a stock corporation to provide a transfer
book to enable stockholders to exercise the rights given them
by law. But it is claimed that the action of the directors in
adopting a new stock book was invalid for the reason that the
notices of the meetings of March 31st and April 1st did not
specify the purpose for which they were called. This
objection assumes that there is a general principle in the law
of corporations which requires the object of a directors' meet-
ing to be specified in the notice in order to validate corporate
action. There is no statutory regulation, nor did the by-laws
of the Argus Company make any provision on the subject. We
do not find that any such general rule has been established by the
decisions, and it is believed that such a rule would be con-
trary to the general practice and understanding. When a
meeting of directors is notified without specification of the
particular purpose, it would naturally be understood that it
was called to consider any matters pertaining to the conduct
of the affairs of the corporation which might come
before it. The statute regulates with great particularity
how meetings of stockholders shall be called and con-
ducted for the determination of important questions
affecting the interests of the corporation, such as the

mortgaging of the corporate property, the increase of stock, the incurring of liability by the guarantee of the bonds of other corporations. We need not determine whether a meeting of directors called to take action upon an extraordinary emergency involving the exercise of unusual power, might require a departure from the ordinary rule. It is sufficient to say that the adoption of a new stock book was not an occasion of this character, and that a general notice is all that is required to a valid meeting of directors for the determination of matters pertaining to the ordinary business affairs of the corporation. The objection now made might be disposed of upon a narrower ground, viz., that no notice, however specific, could under the circumstances have reached Mr. Manning.

(3) The objection that the Cassidy stock had been sold to Speer and, therefore, could not be legally voted upon by Cassidy, proceeds upon a mistaken assumption. The transaction relating to the sale of the Cassidy stock to Speer, is shown by writings. From them it appears that the contract was executory and that the payment by the vendee was conditional upon the transfer of the stock to Speer upon the books of the company, and this condition had neither been performed nor waived on the 12th day of April. The title at that time remained in the Cassidys, and being stockholders of record as to all except the 30 shares which still stood in the name of Mrs. Cassidy, the 120 shares could be properly voted upon by William R. and John P. Cassidy.

(4) The 40 shares standing in the name of John P. Cassidy were voted upon by Mr. Cohen under a proxy executed to him by William R. Cassidy, as attorney for John P. Cassidy. It is claimed that the power of attorney held by William R. Cassidy from his brother did not authorize him to vote on the stock in the name of John P., and that the authorization to Cohen was, therefore, not within his authority. The judge at Special Term adopted this view, but as the result would not be changed by rejecting the vote on the 40 shares, it is unnecessary to re-examine the question.

(5) The claim that the stock standing on the new stock book in the name of Speer, and of the Cassidys, was voted in violation of the injunction issued by Judge EDWARDS, rests on the following facts:

On the evening of April 1, 1893, an injunction was issued by Judge EDWARDS in a suit commenced by James H. Manning and Frederick C. Manning, enjoining the defendants, Lucie R. Cassidy, William R. Cassidy, and William McM. Speer, from voting either in person or by proxy on any shares of the stock of the Argus Company " which have not been owned by them or either of them for at least 10 days next preceding the 12th day of April, 1893," and restraining the inspectors appointed at the meeting of March 31, 1893, who were made defendants in the action, or their substitutes, from receiving any votes " on said shares." The injunction contained a further provision restraining the defendants or any of them " from using at any such meeting or at said election (the election of April 12) any book or paper purporting to contain the record of membership of the Argus Company, or any alleged stock or scrip book prepared in pursuance of any alleged resolutions adopted at said illegal meetings held on the 31st of March, 1893, and the said 1st day of April, 1893, by said defendants William R. Cassidy and William H. Johnson, until the hearing and determination of a motion to be made," etc. The injunction order was served on the inspectors appointed at a meeting of March 31st, and the other defendants, on the morning of April 12th, before the election took place. Upon the organization of the meeting new inspectors were chosen and the election proceeded. Cohen as proxy for John P. Cassidy, William R. Cassidy and Speer offered to vote on their shares and the vote was received and counted.

The first part of the injunction order was not violated, for the reason that the stock of Speer, William R. Cassidy and John P. Cassidy had been owned by them and was registered in their names more than 10 days prior to the election.   By

the second clause the defendants were restrained from using the stock book adopted at the meetings of March 31st and April 12th. It was proved without contradiction that that book, although lying upon the table, was not referred to or used at the meeting. The votes were challenged, and the 20th section of the General Corporation Law provides that "if the right to vote at any such meeting shall be challenged, the inspectors of election, or other persons presiding thereat, shall require such books (including the stock book), if they can be had, to be produced as evidence of the right of the persons challenged to vote at such meeting, and all persons who may appear from such book to be members of the corporation may vote at such meeting in person or by proxy." The injunction neither enjoined the holding of the election, nor did it authorize or require the use of the old stock book. The new stock book having, as we hold, been legally adopted as the stock book of the company, and the inspectors having been enjoined from using it, the qualification in section 20 applied. The inspectors were to use the books of the company in determining the validity of the challenges, "if they can be had," and having been enjoined from using the new stock book, they were placed in the same position as if it could not be found, and they had no right to use a former stock book in determining the challenges. We think there was no violation of the injunction, and it is unnecessary to determine how such a violation, if it existed, would have affected the controversy.

Striking out the 40 votes cast in the name of John P. Cassidy, and the 30 votes upon the shares which stood in the name of Mrs. Cassidy, there remains 230 to 240 votes cast for the new directors, while the minority vote ranged from 190 to 210 votes.

There were some objections to the reception and rejection of evidence on the hearing before the referee. They in the main were connected with an effort on the part of the counsel for the appellants to trace the identity of the persons who

advanced the money to Speer for the purchase of the Worth-ington and Cassidy stock. The strict rules which govern the reception of evidence in civil actions are not applicable to a proceeding of this character, and we are of the opinion that no essential right of the appellants was prejudiced by the rul-ings made.

Upon the whole matter we are of opinion that no substan-tial error has been pointed out, and that, therefore, the order of the General Term should be affirmed.

All concur.

Order affirmed.