ABRAMS v. BLOCH.

(Supreme Court, Appellate Term.   November 14, 1906.)

Argued before GILDERSLEEVE, DUGRO, and DOWLING, JJ.

In re UTICA FIRE ALARM TELEGRAPH CO.

(Supreme Court, Appellate Division, Fourth Department.   November 14, 1906.)

1. CORPORATIONS—ELECTIONS—VALIDITY—PROCEEDINGS TO DETERMINE—QUESTIONS DETERMINABLE.

A proceeding instituted under General Corporation Law, Laws 1892, p. 1018, c. 687, § 27, empowering the Supreme Court to summarily inquire into and determine the validity of corporate elections, or any matter touching the same, is inappropriate for determining an equitable right of a corporation in shares of stock, the title to which is in its directors, but for which the corporation paid a portion of the purchase price.

2. SAME—WHO ENTITLED TO VOTE.

General Corporation Law, § 20, Laws 1901, p. 975, c. 355, gives the right to vote at corporate meetings only to "stockholders of record," and provides that those holding stock as security or actually belonging to another shall issue to the pledgor or actual owner of the stock a proxy to vote thereon.   A corporation not having sufficient money to buy certain stock, it was arranged that its directors should purchase such stock, giving their note therefor.   Almost three-fourths of such note was subsequently paid with corporation funds; the directors still holding stock in their own name

and themselves paying the balance of the note. *Held* that, while the corporation may have had an equitable interest in such stock, it was neither the record holder nor the owner of the legal title so as to authorize it to vote under section 20.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 755.]

3. SAME—KEEPING OF STOCK BOOK—FAILURE TO OBJECT.

Stock Corporation Law, Laws 1892, p. 1831, c. 688, § 29, requires every corporation to keep a stock book showing the names, alphabetically arranged, of stockholders, shares held by them, etc. One who was not the record holder or legal owner of certain shares of stock, as was necessary to authorize the voting of such stock at an election of the corporation, at the time of the election did not object to the stock book but claimed the right to vote such stock. *Held*, that the stockholder could not be aided in a proceeding to set aside the election and for a new election by the fact that the stock book, though containing the information required by section 29, was in the form of a stock certificate book, rather than the exact form required by such section.

4. SAME—STOCK NOT VOTED—EFFECT ON RESULT.

Though certain shares of stock were not permitted a vote at a corporate election, as might have been demanded, the election will not be set aside, where, had the stock been voted, the result would not have been affected.

Appeal from Special Term, Herkimer County.

Proceedings by the Cressett Electric Company to set aside an election of directors of the Utica Fire Alarm Telegraph Company. From an order dismissing the proceedings, petitioner appeals. Affirmed.

The proceeding was begun by an order to show cause made February 2, 1906, requiring the Utica Fire Alarm Telegraph Company, S. J. Tunbridge, Thomas E. Jones, J. C. Eichmeyer, A. J. Potter, and W. H. Pryor to show cause why the relief prayed for in the petition upon which their order was made should not be granted. The relief demanded in the petition is to set aside the election of directors of the Utica Fire Alarm Telegraph Company held January 29, 1906, and for a new election of directors; the individual respondents claiming to have been elected directors at such election. The petition further asks that the right of the petitioner in 275 shares of the stock of the corporation respondent be adjudicated and established, and certificates therefor be issued to it. The capital stock of the corporation consists of 510 shares of $50 each. Of that number of shares there were voted at the election 289 shares. It is conceded that 235 shares were properly voted. The remaining 54 shares so voted the petitioner claims were improperly voted and that, while the stock was issued in the names of the persons who voted it, in fact it was owned by the petitioner, the Cressett Electric Company, that company claiming to own 275 shares of stock in the fire alarm company, of which the 54 shares were a part. The secretary of the Cressett Company challenged the right of the persons voting the 54 shares, and offered to vote on behalf of the Cressett Company the 275 shares of stock, but his offer was refused, and this controversy is over the right of the Cressett Company to vote upon the 275 shares of stock. A question of fact arising upon the allegations contained in the petition by affidavits filed in opposition thereto, an order of reference was made, proof was taken thereunder, and upon the coming in of the report of the referee an order was made confirming the report and dismissing the proceeding, and adjudging that the respondents Eichmeyer, Pryor, and Potter are the owners of the 54 shares, each owning 18 shares thereof, being the same 54 shares of stock which the Cressett Company claims to own and have the right to vote upon. From that order this appeal is taken.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

James H. Merwin, for appellant.
Frederick H. Hazard, for respondent.

KRUSE, J.  The Cressett Electric Company, the petitioner in this proceeding, was organized under the laws of this state as a stock corporation in November, 1903; the authorized capital being $30,000, and its business as stated in the certificate of incorporation being a general electric business, including the manufacture, sale, and supply of all kinds of electric and telephone and telegraph apparatus, and to have the power to hold the stock and securities of other corporations.  The Fire Alarm Telegraph Company is an older corporation, also organized under the laws of this state.  Its business is about the same as that which the Cressett Company proposed to do.  The Cressett Company was organized by workmen who had been employed by the fire alarm company, and had gone out on a strike.  Soon after the Cressett Company was organized and its stock was being subscribed for, two of the stockholders of the fire alarm company, owning 275 shares of the stock, made a proposition to the directors of the new company, the Cressett Company, to sell their stock in the fire alarm company, and the proposition was regarded favorably by those interested in the new company. It was found, however, that the Cressett Company shareholders had not paid in sufficient funds to pay for all of the 275 shares of stock, and it was proposed by the directors of the Cressett Company that the two stockholders who had made the offer to sell the stock sell 200 shares of their stock; but they declined to sell any of it unless they could dispose of all their holdings, which was the 275 shares.  It was then proposed that the directors of the Cressett Company themselves take over the 75 shares and give their notes therefor, the stock to be held by the sellers as security for the payment of the note.  One of the directors refused the offer; but finally the remaining four accepted the proposition, and thereupon, and on the 27th day of January, 1903, the negotiations culminated in the sale of such stock, 200 shares thereof being reissued in the name of the Cressett Electric Company, and being paid for with money which had been paid in by subscribers of the stock of the Cressett Company; the payment being made by a check of the Cressett Company for $10,000.  For the remaining 75 shares the remaining four directors gave their individual joint note of $3,750, payable on demand. The 75 shares of stock were reissued in a certificate to the four directors individually, except that two shares were reissued, one to Sheffield and the other to Kellogg; these being the sellers of the stock.  But within a few days thereafter, on the 5th day of February, 1903, these two shares were reissued to the four directors individually, and the 75 shares so issued to them were turned over to secure the payment of the note.  Ultimately, and on February 21, 1905, and after or about the time the note was paid, 72 shares of the stock seem to have been reissued, 18 shares to each of the four makers of the note.  It appears that Mr. Sheffield was liable upon a $10,000 note of the fire alarm company, and it was arranged that he also retain the 200 shares to secure him against liability thereon.  This note was afterward paid.  It is these 275 shares of stock which the Cressett Company, the petitioner, claims to own and have the right to vote upon.  And it is necessary for it to establish that fact to enable it to succeed in setting aside the election of directors.  There were 289 shares of stock voted.  No question is

raised as to 235 shares so voted, so that, even if the 54 shares were improperly voted, it would not affect the result unless the Cressett Company had the right to vote, not only the 200 shares, but also the 54 shares, or at least a sufficient number of the 54 shares so that with the 200 shares the number would exceed the 235 shares, concerning which there is no question.

The right of the Cressett Company to vote upon the 200 shares which stand in its name does not seem to have been questioned. At all events, the shares were so voted in 1903, 1904, and 1905. No offer was made on its behalf to vote the 200 shares in 1906, but it was sought to vote the 275 shares at that meeting. Neither was the right of the four persons denied or questioned to vote the shares standing in their name and voted by them until the annual meeting in 1906. Some time before the annual meeting in 1906 a disagreement seems to have arisen among the four men who held the 75 shares of stock; Campbell, one of the four, being upon one side and evidently favorable to the claim that the entire 275 shares belonged to the Cressett Company, and Eichmeyer, Potter, and Pryor, the other three, being on the opposite side. After the annual meeting in 1905 and early in February, an attempt seems to have been made to allot the 200 shares of stock to the stockholders of the Cressett Company according to their holdings in the Cressett Company, at the rate of $65 a share. Certificates were filled out to the Cressett stockholders by Campbell, who was at that time a director and secretary of the Fire Alarm Company, but were never signed by the officers or distributed. Campbell contends that he was opposed to this, but that the other three favored it.

Much evidence was taken for and against the claim that it was originally intended to distribute the stock among the Cressett stockholders, instead of to the company, but it seems unnecessary to discuss it in detail. The referee found, and, as we think, correctly, that the Cressett Company owned and was entitled to vote upon the 200 shares. The 75 shares of stock issued to these four men, as has been stated, were never in the name of the Cressett Company. On February 21, 1905, 72 shares thereof were reissued in four certificates for 18 shares each —one to Campbell, one to Eichmeyer, one to Potter, and one to Pryor, being the persons to whom the 75 shares were transferred by Sheffield and Kellogg. The last three men voted upon their 54 shares of stock, each voting his 18 shares at the January, 1906, election, which is in dispute. Campbell did not attempt to vote upon his 18 shares at that election, but contended that it belonged to the Cressett Company, and insisted that the shares standing in his name, together with the rest of the 75 shares, should be voted by the Cressett Company in connection with the 200 shares, and a ballot was prepared to be voted on behalf of the Cressett Company on the 275 shares. This ballot the inspectors refused to receive. Campbell's name was upon this ballot as one of the directors, but was not upon any other of the ballots which were voted, and he was not elected at this election. Up to 1906 Campbell, Potter, Eichmeyer, and Pryor seem to have been directors of both corporations. The claim that the 75 shares of stock belong to the Cressett Company is based not only upon what is claimed to have been the original understanding, that the entire 275 shares should be acquired by the Cressett

Company, thus giving the Cressett Company the controlling interest in the fire alarm company, but the further fact that a larger part of the money which paid the note given for the stock was money belonging to the Cressett Company. It appears that the whole amount paid for principal and interest on the note was $4,020.94, of which amount Campbell, Eichmeyer, Potter, and Pryor, the makers of the note, paid from their wages and other personal funds the sum of $1,110.94. The balance thereof was paid from moneys that were received and paid in from time to time on Cressett Company stock subscriptions.

It is contended on the part of the individual respondents that they were entitled to profits in negotiating and bringing about the sale of the 200 shares of stock in the interest of the Cressett Company or its stockholders, and that the understanding was that the stockholders of the Cressett Company should pay at the rate of $65 a share, instead of at $50 a share, the price paid to Sheffield and Kellogg therefor. We do not take kindly to that suggestion. The referee found against this claim, and we agree with him. He, however, held that the using of this money after the title to this stock had been acquired by the four persons in part payment therefor did not invest the Cressett Company or its stockholders with the title to the 75 shares of stock, and to this we also assent. It is, however, not so clear from all the facts and circumstances in the case that the finding would not be warranted that the Cressett Company has at least an equitable right in the 75 shares, and that in a proper action it might not require the transfer thereof to it upon a proper adjustment between it and the four persons who took the title to the stock in their own name and paid therefor, at least in part. But we do not decide that question. This proceeding is brought under the provisions of section 27 of the general corporation law (Laws 1892, p. 1810, c. 687), which empowers the Supreme Court summarily to inquire into and determine the validity of the elections of corporations and any act or matter touching the same. While the court has ample power under this section to determine any question relating to the election, even such as is merely incidental thereto when necessarily involved in the controversy, the proceeding is not an action, and is inappropriate for determining equitable claims or questions not necessarily involved in deciding the primary question. Farmer v. Farmer & Son Type Founding Company, 83 App. Div. 218, 225, 226, 82 N. Y. Supp. 228; Matter of Argus Company, 138 N. Y. 557, 573, 34 N. E. 388. We have reached the conclusion that the Cressett Company was not entitled to vote the 75 shares, 54 of which were voted, and properly so as we think, by the three persons in whose names the stock stood.

Section 20 of the general corporation law (Laws 1901, p. 975, c. 355) provides:

"20. Qualification of members as voters. Unless otherwise provided in the certificate of incorporation, every stockholder of record of a stock corporation shall be entitled at every meeting of the corporation to one vote for every share of stock standing in his name on the books of the corporation; and at every meeting of a non-stock corporation, every member, unless disqualified by the by-laws, shall be entitled to one vote. The stockholders of a stock corporation, by a by-law adopted by vote at any annual meeting, or at any special meeting duly called for such purpose, may prescribe a period, not exceeding forty days prior to meetings of the stockholders, during which no transfer of

stock on the books of the corporation may be made. Except in cases of express trust, or in which other provision shall have been made by written agreement between the parties the record holder of the stock which shall be held by him as security, or which shall actually belong to another, upon demand therefor and payment of necessary expenses thereof, shall issue to such pledgor, or to such actual owner of such stock, a proxy to vote thereon. * * * The books and papers containing the record of membership of the corporation shall be produced at any meeting of its members upon the request of any member. If the right to vote at any such meeting shall be challenged, the inspectors of election, or other persons presiding thereat, shall require such books, if they can be had, to be produced as evidence of the right of the person challenged to vote at such meeting, and all persons who may appear from such books to be members of the corporation may vote at such meeting in person or by proxy, subject to the provisions of this chapter."

The Cressett Company had neither the legal title to the stock, nor was it the record holder thereof; and it is only stockholders of record who are entitled to vote. Matter of Argus Company, 138 N. Y. 557, 573, 577, 34 N. E. 388; Matter of Glen Salt Company, 17 App. Div. 234, 45 N. Y. Supp. 568.

It is, however, contended upon the part of the petitioner that no stock book was kept as required by section 29 of the stock corporation law (Laws 1892, p. 1831, c. 688). It is true that no book was kept in the precise form required by that section. There was, however, a stock certificate book containing the necessary information to answer the requirements of the statute, and showing precisely who the stockholders of the corporation were, and the number of shares held by them, and when they became the owners thereof. And, besides, no such objection was urged by the Cressett Company at the election. Its attitude was quite the reverse; for it proposed to vote upon the 275 shares, and did not and does not now challenge the vote upon the 235 shares voted upon at that election. But beyond that, as has been stated, the Cressett Company did not hold the legal title to the 75 shares, nor was it the apparent owner thereof, and so no record could have been made up which would have aided it. We think that the persons who voted upon the 54 shares had the legal right to do so; but, be that as it may, we do not think the Cressett Company was in any event entitled to vote thereon, and, if it did not have the right, the result could not have been affected, for, without these 54 shares voted for the successful ticket, there were 235 shares voted therefor, which it is conceded were rightfully voted. Giving to the Cressett Company the votes on the 200 shares standing in its name and the 18 shares standing in the name of Campbell, it would still lack 17 shares of having as many votes as the successful ticket.

If the conclusions we have reached are correct, it follows that the election of directors of the respondent corporation is valid.

The final order should therefore be affirmed, with costs. All concur.