# SUPREME COURT.

## JOHN G. WHITE, respondent agt. THOMAS SCHUYLER, appellant.

If a *written agreement* is signed by the party sought to be charged, and is certain, fair and just, in all its parts, it is not necessary that it should be signed by the party seeking to enforce it, in order to its *specific performance*. That is, the want of *mutuality* is no objection to its enforcement.

A written agreement to re-convey, at a certain time, for a valuable consideration, a certain number of shares of the capital stock of a "Steam Tow boat Association," and to pay certain dividends received thereon, may be *specifically performed*, notwithstanding an objection that the contract relates to a class of property in regard to which it is not usual to direct a specific performance, on the ground that the party has an adequate remedy at law in damages. There may or may not be an adequate remedy at law, and besides the parties have specifically agreed to re-convey.

Where the *time* within which an agreement is to be performed is purely a question of *fact*, which has been considered with care by the judge at special term, the court at general term will not usually disturb the decision made thereon.

*Albany General Term, September,* 1865.

*Before* HOGEBOOM, MILLER *and* INGALLS, *Justices.*

THE defendant appeals from a judgment in favor of the plaintiff, rendered under the direction of Mr. Justice MILLER, on a trial before him, without a jury, at the Albany circuit, in May, 1864.

The action was brought to compel the defendant to transfer to the plaintiff one hundred and eighty-two shares of the capital stock of "Schuyler's Line Steam Tow Boat Association," and to pay him certain dividends received thereon, which the defendant claimed to hold as his own property by virtue of a contract dated June 2, 1862. The judgment was for a specific performance of this contract. No costs of the action were given to either party as against the other.

The leading features of the case are, as found by the justice who tried the cause, as follows:

Prior to the 2d of June, 1862, the plaintiff was the owner of one hundred and eigthty-two shares of the capital stock of "Schuyler's Line Steam Tow Boat Association," of the par value of $18,200, for which a certificate had been duly issued; and on the 2d of June, in consideration of $15,000 paid by the defendant on account of the plaintiff, the stock was delivered to the defendant, and thereupon he gave the plaintiff an agreement in writing to the effect that Schuyler would, on the 1st day of February, 1863, upon payment by White to him of $16,500, and indemnifying him against any loss on account of having indorsed his paper, sell and convey to White the one hundred and eighty-two shares of stock in question, with any dividend which it should earn in the year 1862, and if at that time the value of the stock was more than $16,500, the excess in value should be paid to M. H. Read, receiver of the bank of the capitol, on the indebtedness of White to said receiver, if the said indebtedness should not sooner be paid. That on the 10th of February, 1863, the defendant received $9,100 for a dividend on

said stock, and on the 10th of February, 1864, a further dividend of $5,460.

That on the part of the defendant there was a waiver of strict performance by the plaintiff on the day named, and the time was extended, and within the extended time plaintiff tendered the defendant $16,500, and demanded the stock and dividends, and the defendant refused to transfer the stock or pay over the dividends.

That the defendant has not sustained any loss by reason of indorsing the plaintiff's paper, and is not under any liability on that account; and the indebtedness of the plaintiff to the receiver of the bank of the capitol, has been fully paid and discharged.

Upon these facts found, a judgment was directed that upon payment of $16,500, with interest from February 1, 1863, deducting the dividends received by the defendant, the defendant transfer the stock to the plaintiff, with all dividends and accumulations since the 10th of February, 1864.

The testimony is, in some respects, conflicting, especially in regard to the extension of the time for performance, and to what period such extension was made.

JOHN H REYNOLDS, *for plaintiff, respondent.*
IRA SHAFER, *for defendant, appellant.*

*By the court,* HOGEBOOM, J. No other objections to the enforcement of the specific performance of this contract are made than the want of mutuality, and the failure on the part of the plaintiff to perform, or offer to perform, within the stipulated time; 2 *Story's Equity Jurisprudence, sections* 729, 736, are cited in support of the proposition as to want of mutuality, but I do not see that they are directly applicable. On the contrary, the same author, at *section* 736 *a.,* states as follows: "But it is not necessary to the specific performance of a written agreement that it should be signed by the party seeking to enforce it; if the agreement is certain, fair and just, in all its parts, and signed by the party

sought to be charged, that is sufficient, *the want of mutuality is no objection to its enforcement.*"   The following authorities are cited in support of this doctrine: (*Woodward* agt. *Aspinwall*, 3 *Sandf. S. C. R.* 272; *In re Hunter*, 1 *Edw. Ch. R.* 1; *McCrea* agt. *Purmort*, 16 *Wend.* 460; *Clason* agt. *Bailey*, 14 *John. R.* 484.)

It is not objected that the contract relates to a class of property in regard to which it is not usual to direct a specific performance upon the ground that the party has an adequate remedy at law in damages.   But, if such objection had been taken, I think it ought not to have been sustained. 1. Because the parties evidently contemplated, and specifically contracted, for a re-conveyance of the stock.   2. Because, as well on account of the uncertain value of the stock in market, and the infrequent sales of it, as the varying character and success of the business which the stock reprerepresented, it was difficult, if not impossible, to do justice between the parties in an award of damages.   These are controlling reasons in equity for a specific performance. (*Philips* agt. *Berger*, 2 *Barb.* 609; 2 *Story's Eq. Tit. Specific Performance*, § 716 *to* 719; 6 *Johns. Ch. Rep.* 222; *Seymour* agt. *Delancey*, 3 *Cow.* 445.)

The other objection to a specific performance, to wit, the omission to perform within the time, to which the right of performance was extended by the stipulation or understanding and conduct of the parties, involves a question of fact. The judge at the special term, before whom the cause was tried, has examined that question with care; has evidently given to it much attention; and, notwithstanding the criticisms of the learned counsel for the appellant, was, I think, warranted in his conclusions upon a review of the testimony, which upon scrutinizing the witnesses, he was permitted to take.   I do not deem it necessary to review the facts, nor to re-state the conclusions which the testimony justifies.   I am myself of opinion that upon the plaintiff's version of the conduct and understanding of the parties, the contract was fairly open for performance up to the 28th of February, and that the unequivocal refusal of the defendant to perform on

that day, either rendered an absolute tender and offer to perform before suit brought unnecessary, or made the tender on the 16th of March, as preliminary to the institution of a suit for specific performance in season, especially as the court below did not charge the defendant with costs.

I am, therefore, of opinion, if we are to put the same interpretation upon the character of the contract that the judge did at the trial of the cause, that the judgment should be affirmed with the costs of appeal.

· This makes it unnecessary to examine the other question' made in the case, to wit: whether the whole transaction was not in the nature of a security for the loan of money.

· If that question be open for examination here, and doubt in regard to the other aspect of the case made it expedient for the plaintiff to present it, I should be loth to enter upon the examination after an adverse conclusion by the court below, and a decision in favor of the plaintiff on other grounds, and in general, should think it better to remand the case for the purprse of re-examination, and the presentation of a distinct exception or review on that point by the party aggrieved.

I am for affirming the judgment of the court below, with costs.