[No. 21598. Department Two. September 27, 1930.]

Tom Fox, *as Trustee, Respondent,* v. A. Royal Mc-Keown *et al., Appellants,* L. W. Rose *et al., Respondents.*[1]

[1]Reported in 280 Pac. 939.

*Stratton & Kane* and *Geo. G. Hannan,* for appellants.

*Paul, Long & Carlson* and *Frank L. Walters,* for respondents.

MILLARD, J.—When, in 1924, West Seattle Post No. 160, American Legion, was financially unable to accomplish its purpose of acquiring land and erecting thereon a permanent home for the post and its ladies' auxiliary, thirteen members of the post, the post, and the auxiliary to the post, contributed in excess of one thousand dollars for the purchase of a tract of land, the major portion of the money being advanced by Dr. McKeown, the energetic commander of the post. That group organized a corporation known as the West Seattle American Legion Club, Incorporated. The one thousand shares of the capital stock of the corporation were distributed among the fifteen stockholders in proportion to the amount of money advanced by each shareholder. The stated par value of

each share was twenty dollars. The articles of incorporation recite that the purpose is,

"To erect, furnish, establish, operate and maintain, a club house with its rooms, quarters and grounds for the use of the American Legion, in that part of the city of Seattle, known as West Seattle."

The first meeting of the stockholders was held December 16, 1924. At that meeting, the "proposed by-laws of the corporation were assented to by the stockholders after due consideration, and the president *pro tem* was instructed to present them to the board of trustees for action." The stockholders elected Dr. A. Royal McKeown, Wilmer Brinton and L. W. Rose trustees for the corporation. The minutes of the trustees disclose that the proposed by-laws were adopted; that:

"Dr. McKeown, as president of the West Seattle American Legion Club, made the proposal that the club deed its property upon which it is proposed to build a club house to the corporation in exchange for fully paid up capital stock in a corporation in direct proportion to the amounts of money spent by the various members of the club in acquiring and improving the said property; its proportions being determined in terms of capital stock as follows: West Seattle Post No. 160, The American Legion, 42 shares; Auxiliary to West Seattle Post No. 160, The American Legion, 42 shares; A. Royal McKeown, 741 shares; W. B. Brinton, 35 shares; L. W. Rose, 21 shares; Bert Cruikshank, 21 shares; D. R. Raymond, 14 shares; E. W. Badcon, 14 shares; A. S. Harmor, 14 shares; Raymond E. Knight, 14 shares; F. W. Harrison, 14 shares; C. E. McMillan, 7 shares; J. N. Webb, 7 shares; J. A. Popp, 7 shares; Stewart Thompson, 7 shares; total 1,000 shares. . . . *It was agreed to accept this proposition and to issue fully paid up certificates of stock in the corporation as indicated in the proposition in exchange for the deed and the officers of the corporation authorized to issue said stock certificates upon receipt of said deed. . . . That for the pur-*

*pose of creating treasury stock for the corporation, each stockholder shall assign half his holdings to a stockholder specially designated as trustee for the purpose; such stock to be known as treasury stock and to be held by said trustee subject to the order of the board of trustees; and to be disposed of by them for value only.* Dr. A. Royal McKeown was by unanimous vote of the board designated as said trustee and empowered to receive and hold said stock for the corporation.''

Upon adjournment of the meeting of the board of trustees, the stockholders reconvened and the action of the trustees was approved as follows:

"The proceedings of the board of trustees immediately preceding this re-convening was reported to the stockholders, and upon motion regularly made, seconded and carried, the action taken by the board of trustees was approved.''

Pursuant to the agreement of the stockholders, one-half of the stock was issued to McKeown as trustee and accepted by him. Dr. McKeown is now, and has been since its organization, president of the West Seattle American Legion Club. He caused to be erected upon the club's land a service station and one other building, expending of his own money, in excess of rents received from the property, approximately five thousand dollars. For $4,411.40 of that amount, the corporation's notes were issued by the other two trustees to Dr. McKeown. At the stockholders' meeting of January, 1927, E. W. Badcon was selected to succeed Brinton as trustee. On July 11, 1927, at a meeting of the executive committee of the Legion post, Tom Fox was appointed as post trustee "to purchase and hold for the post 502 shares of the treasury stock of West Seattle American Legion Club, Incorporated, for a sum not to exceed three hundred fourteen dollars,'' and authorized to take whatever legal action was necessary to obtain the stock and protect the inter-

ests of the post. On July 14, 1927, Fox, as the post's trustee, offered to the board of trustees of the corporation three hundred and fourteen dollars for all of the outstanding trust stock held by McKeown, being the amount of principal and interest then due McKeown on a note of the corporation. McKeown offered the same amount on his own behalf. The board, by a vote of two to one, accepted the offer of the post's trustee.

Upon the refusal of McKeown to make the transfer, this action was commenced by the plaintiff to compel the transfer to him as trustee of the post of the shares of stock of the corporation held in trust by McKeown. The corporation and the three trustees were made defendants. Two of the trustees, Rose and Badcon, joined with the plaintiff in the relief sought. The cause was tried to the court, resulting in findings and conclusions in favor of the plaintiff, and from the decree of specific performance entered, the appeal is prosecuted.

The questions presented are:

(1) What was the legal status of the shares of stock when issued to McKeown in trust? (2) Would the sale of the stock to respondent for the price offered violate the terms of the trust?

The West Seattle American Legion Club was incorporated to effectuate the purpose of the members of the West Seattle American Legion to build a home for the post and the auxiliary to the post. The thirteen interested members, led by the active commander of the post, when the post was unable to purchase a site, advanced (as did the post and auxiliary) funds that land might be acquired and the first step taken to bring to fruition the hopes of the post. The contributions of the fifteen shareholders, while sufficient to buy the building site, were insufficient for aught else. It

was therefore decided that a corporation should be organized. One thousand shares of stock were issued and distributed as heretofore shown. It was agreed by the shareholders that, of the stock to which each was entitled, one-half would be placed in trust with McKeown to be held by him subject to the order of the board of trustees "and to be disposed of by them for value only." The certificates of stock were issued to and accepted by McKeown as trustee. The stock was issued and became the personal property of each stockholder. One-half of the stock pursuant to the agreement of the stockholders was placed in the hands of McKeown, as trustee, to be held by him for disposition as directed by the board of trustees, subject only to the limitation that it be transferred "for value only." The stock was in no sense the property of the corporation.

"Stock is issued when it is put into possession of stockholders, or when it has been subscribed for, as that the subscriber is entitled thereto. The actual issuance and delivery to the stockholder of a certificate of stock is not necessary. The unissued stock of a corporation forms its capital at par, and it can be disposed of only by the corporation and according to law." 14 C. J., p. 407, § 552.

Public policy does not forbid, nor is there any statute inhibiting, the division, as was done here, of the capital stock of the corporation among the fifteen shareholders. The articles of incorporation, the minutes of the board of trustees and the minutes of the stockholders' meetings (it is not necessary to refer to other evidence brought here in the statement of facts) evince the purpose of the stockholders to acquire a permanent home for the Legion post and its auxiliary.

It is likewise manifest that it was the intention that the Legion post be given control of the

property. Under the agreement of the subscribers, one-half of the stock was surrendered to McKeown as trustee. Apprehensive that the purpose for which the corporation was created would be defeated, the Legion post pursued the proper course to acquire control of the stock.

". . . specific performance may be had of a contract to deliver stock, the pecuniary value of which is not readily ascertainable, or where the stock has no market value. . . ." 25 R. C. L., p. 298.

The plan here adopted does no injustice to any stockholder, all of them having agreed to it with full knowledge of all of the facts. None now appears to object to the agreement, except one stockholder, the trustee who accepted the trust of holding the stock subject to the order of the board of trustees. That the stockholders may surrender one-half of their stock to a trustee, as was done in this case, is clear. Those stockholders are not objecting now to the terms of their contract. Fox was legally authorized to act as trustee for the post to purchase for the post the shares of stock held by McKeown as trustee. A majority of the board accepted the offer of the post. The stock has no market value; in fact it has been impossible to borrow money on the stock. The fact that the stock contracted for will give the post control of the corporation, which it should have (and which the shareholders intended it to have) if the objective of acquiring a permanent home for the Legion post is to be achieved, is in itself a reason for granting specific performance.

Appellant urges that the sale was "not for value." What was the value of the stock? Its value is to be measured by that of the corporate property. What is the corporate property? What are its assets?

The real estate of the corporation was valued at not more than seven thousand dollars. The outstand-

ing indebtedness against the property amounts to more than sixty-eight hundred dollars. Trustee McKeown testified, when examined under supplemental proceedings in April, 1927, that the stock had no value. He valued the stock at not more than three hundred and fourteen dollars when respondent desired to buy it; at least that is the price he offered for it. Doubtless the other two trustees estimated the value at not more than three hundred and fourteen dollars, having in mind that the outstanding obligations equaled the corporate assets, and they probably also were not forgetful of the real purpose of the shareholders to provide a home for the Legion post. The judgment of the board of trustees as to the value of the stock is entitled to consideration. The evidence preponderates in support of the conclusion of the board of trustees and the finding of the trial court that the transfer of the stock was for value.

Appellant McKeown insists that the corporation is indebted to him and that he holds the trust stock as a pledge. The burden of establishing that contention he has failed to sustain.

Appellant McKeown next complains that if specific performance be granted, the decree for transfer of four hundred and ninety-eight shares is erroneous, inasmuch as only four hundred and twenty-five shares were issued and delivered to him in trust. We have carefully read the statement of facts and examined the stock book, from which it clearly appears that four hundred and ninety-eight shares of stock were issued and delivered to McKeown as trustee.

We have considered the other assignments of error and find them to be without substantial merit.

The decree is affirmed.

MITCHELL, C. J., FRENCH, MAIN, and PARKER, JJ., concur.