(135 So. 329)

GENERAL SECURITIES CORPORATION v. WELTON.

6 Div. 752.

Supreme Court of Alabama.

May 14, 1931.

Rehearing Denied June 25, 1931.

Murphy, Hanna, Woodall & Lindbergh, of Birmingham, for appellant.

Fitts, Boyle & Fitts, of Birmingham, for appellee.

THOMAS, J.

Respective counsel say the exact case has not been decided by this court.

The bill is for specific performance. Demurrer was overruled as to the bill as a whole and each and every aspect thereof. City of Birmingham v. Louisville & N. R. Co., 216 Ala. 178, 185, 112 So. 742.

■■ In determining the propriety of such a decree, the inadequacy of a legal remedy is a primary consideration. If the character of the property be such that the loss of delivery per the contract will not be fairly compensated in damages, based upon an estimate of its market value, the general rule is that relief may be had in a court of equity. Jones v. Newhall, 115 Mass. 244, 15 Am. Rep. 97. Inadequacy of legal remedy was the subject of Safford v. Barber, 74 N. J. Eq. 352, 70 A. 371; Manton v. Ray, 18 R. I. 672, 29 A. 998, 49 Am. St. Rep. 811.

In Lewman & Co. v. Ogden Bros., 143 Ala. 351, 360, 42 So. 102, 5 Ann. Cas. 265, the rule is thus declared: "The right to specific performance turns upon whether the plaintiff can be properly compensated by an action at law. Ordinarily the innocent party to a breached contract is entitled only to compensatory damages obtainable in an action at law; but, if, due to exceptional circumstances, an action at law cannot afford adequate relief, equity will specifically enforce the contract, if its terms are such that they do not impose upon the court any difficulty in enforcement, and the contract in other respects does not violate the rules pertaining to actions for specific performance, and there are no facts or circumstances connected with the inception or continuance of the contract which would render it contrary to equity to require its specific performance."

To like effect was Southern Iron & Equipment Co. v. Vaughan, 201 Ala. 356, 78 So. 212, L. R. A. 1918E, 594; Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A. L. R. 987; Dilburn v. Youngblood & Co., 85 Ala. 449, 5 So. 175.

Mr. Pomeroy deals with the remedy of specific performance of contracts as to personal property, saying it is purely equitable, given as a substitute for the legal remedy of compensation, whenever the legal remedy is inadequate or impracticable. "In the langauge of Lord Selborne: 'The principle which is material to be considered is, that the court gives specific performance instead of damages only when it can by that means *do more perfect and complete justice.*' (Wilson v. Northampton, etc., Ry., L. R. 9 Ch. App. 279, 284). The jurisdiction depending upon this broad principle is exercised in two classes of cases: 1. Where the subject-matter of the contract is of such a special nature, or of such a peculiar value, that the damages, when ascertained according to legal rules, would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit; or in oth-

er words, where the damages are inadequate (Board of Com'rs v. A. V. Wills & Sons [D. C.] 236 F. 362) ; 2. Where, from some special and practical features or incidents of the contract inhering either in its subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that no real compensation can be obtained by means of an action at law; or in other words, where damages are impracticable." 5 Pomeroy on Equity Jurisprudence, § 2166.

See note citing Gould v. Womack, 2 Ala. 83, where it is said:

"The question then is, has the complainant made out such a case as will call into active exercise, the extraordinary power of this Court, to enforce a specific performance. The jurisdiction of the Court is not compulsory, but discretionary. The question is not, what the Court must do, but what it may do, under the circumstances, 12 Vesey, Jr. 331. So in the case of Seymour v. Delancey, 6 Johns. Ch. [N. Y.] 222, Chancellor Kent says, 'It is a settled principle, that a specific performance of a contract of sale, is not a matter of course, but rests entirely in the discretion of the Court, upon a view of all the circumstances.' The same effect, are the opinions of Lord Somers, Lord Macclesfield, and other eminent English Chancellors.

"The case just referred to, of Seymour v. Delancey, underwent an examination in the Court of Errors of New York, and the question, whether the Court had a discretion to order or refuse a specific performance of executory contracts, was considered by C. J. Savage, who examines at great length, and with much ability, the leading English and American cases on this subject, and thus sums up the result of his examination. 'On the whole, therefore, I am of opinion, that on the question of decreeing specific performance of executory contracts, the Court of Chancery must exercise its discretion; not an arbitrary, but a sound judicial discretion. If the contract be free from objection, it is the duty of the Court to decree performance. But if there are circumstances of unfairness, though not amounting to fraud or oppression, or if the inadequacy of consideration, be so great, as to render the bargain hard and unconscionable on either ground, the Court may refuse its aid, and leave the parties to contest their rights in a Court of law.' 3 Cow. [N. Y.] 521, 15 Am. Dec. 270." 65 A. L. R. 90.

The insistence as a general rule made by appellant is not an arbitrary rule—that equity will decree specific performance of contracts relating to real estate, and will refuse to decree specific performance of contracts relating to personalty—and is not in accord with the later and better view. The fact is that the general rule is an application of the fundamental principle upon which the remedy of specific performance is based, viz., that equity will decree the specific performance of a contract whenever it is made to appear that an action at law for damages would be an inadequate or impracticable remedy. And in this jurisdiction the specific performance of contracts will be decreed when, under all the circumstances of that case, such action and decree better subserve the ends of justice; and it will be denied when, from a like view, it appears that it will produce hardship or injustice to either of the parties. 65 A. L. R. 69; Ellis v. Burden, 1 Ala. 458; Casey v. Holmes, 10 Ala. 776; Carlisle v. Carlisle, 77 Ala. 339; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; Martin v. Baines, 217 Ala. 326, 116 So. 341. The consideration must likewise warrant that action. Alabama Central Railroad Co. v. Long, 158 Ala. 301, 48 So. 363; Christian Church at Pilgrim's Rest v. Littleville Camp, 185 Ala. 80, 64 So. 9; Day & Barclift v. Stewart, 202 Ala. 229, 80 So. 289; Gay v. Fricks, 211 Ala. 119, 99 So. 846. And the following statement of our rule is comprehensive (65 A. L. R. 58): "In the exercise of its discretionary powers to determine when the equitable relief of specific performance may be invoked, one of the general rules formulated and followed is that this equitable relief will not be granted if, under the circumstances, either because of the inequitable character of the contract or other reason, the result of the specific enforcement of the contract would be harsh, inequitable, oppressive, or unconscionable." Ellis v. Burden, supra; Casey v. Holmes, supra; Blackwilder v. Loveless, 21 Ala. 371; South & North Ala. R. Co. v. Highland Ave. & Belt R. Co., 98 Ala. 400, 13 So. 682, 39 Am. St. Rep. 74; Sherman v. Sherman, 190 Ala. 446, 67 So. 255 (oral inequitable contract); Boylan v. Wilson, 202 Ala. 26, 79 So. 364; Wiggins v. Sullivan, 219 Ala. 186, 121 So. 731 (rule stated, contract held not oppressive or inequitable).

We will advert to general authorities that are cited by counsel. The case of Butler v. Wright, in the Appellate Division of the Supreme Court of New York, 103 App. Div. 463, 93 N. Y. S. 113, is cited by appellant as authority for the proposition that the mere fact that the value of the stock, which is the subject-matter of the executory contract relating to personal property, is not readily ascertainable does not render the remedy at law inadequate; was later and again considered in Butler v. Wright, 186 N. Y. 259, 78 N. E. 1002, 1003, by the Court of Appeals, and was reversed upon the ground that it was impossible to say as a matter of law that the facts proved by the complainant did not entitle him to the relief granted. In reaching this result the Court of Appeals commented as follows: "It will be observed that the agreement which the plaintiff seeks to have specifically performed was in its character executory, and

that, upon its breach, the plaintiff had the right to resort to such remedy as the law afforded, and the question now arises as to whether a court of equity should entertain jurisdiction and compel specific performance, or whether he should be remitted to a court at law to recover the damages which he has sustained. The rule is that, as to contracts pertaining to personal property, a party should be confined to his action for damages, unless it appears that he is entitled to the thing contracted for in specie, which to him has some special value, and which he cannot readily obtain in the market, or in cases where it is apparent that compensation in damages would not furnish a complete and adequate remedy. But in each case the question as to whether a court of equity will take jurisdiction and grant the relief asked for rests in the sound discretion of the court, and it cannot be demanded as a matter of right. Johnson v. Brooks, 93 N. Y. 337; Matter of Petition of Argus Co., 138 N. Y. 557, 572, 34 N. E. 388; Williams v. Montgomery, 148 N. Y. 519, 43 N. E. 57; Bomeisler v. Forster, 154 N. Y. 229, 48 N. E. 534, 39 L. R. A. 240; Lighthouse v. Third Nat. Bank, 162 N. Y. 336, 56 N. E. 738."

It is to be noted that this decision of the Court of Appeals reversing the case of Butler v. Wright, supra, is subsequent to the case of Clements v. Sherwood-Dunn, 108 App. Div. 327, 95 N. Y. S. 766. The opinion of the Court of Appeals of New York in the case of Waddle v. Cabana, 220 N. Y. 18, 114 N. E. 1054, indicates that after some confusion, the New York court accepted the generally prevailing rule that where the complainant shows that the value of the stock sought is not easily ascertainable, or that the stock cannot be obtained in the market without great inconvenience and expense, the purchaser is entitled to a decree of specific performance.

In his book on Stock and Stockholders, Mr. Cook states the New York rule upon this subject to be as follows:

"It frequently happens that the person who has contracted to purchase stock is particularly anxious to procure that stock, and that, under the circumstances of the case, the stock is worth to him a value not to be compensated for by mere money damages. * * *

"An entirely different rule prevails as regards contracts for the sale of stock of private corporations. If the stock contracted to be sold is easily obtained in the market, and there are no particular reasons why the vendee should have the particular stock contracted for, he is left to his action for damages. But where the value of the stock is not easily ascertainable, or the stock is not to be obtained readily elsewhere, or there is some particular and reasonable cause for the vendee's requiring the stock contracted to be delivered, a court of equity will decree a specific performance and compel the vendor to deliver the stock.

"This rule, as applicable to contracts for the sale of railway stock, was clearly established in England in 1841, in the case of Duncuft v. Albrecht, 12 Sim. 189. Contracts for the sale of stock in mining and other private corporations will also be specifically enforced under like circumstances." Cook on Stock and Stockholders, §§ 337, 338.

In the case of Northern Central Railroad Co. v. Walworth, 193 Pa. 207, 44 A. 253, 255, 74 Am. St. Rep. 683, the Pennsylvania court announces the same rule. The facts in that case were that the defendant agreed to sell and deliver to the plaintiff certificates for 10,000 shares of the capital stock of the York Southern Railroad Company, and $142,000 of the 5 per cent. bonds of the same company, and in consideration for this sale, the plaintiff agreed to pay to the vendor the sum of $160,000. The bill averred that the vendee was ready, able, and willing to comply with its part of the contract, but that the vendor failed and refused to comply with his part. In the opinion, holding that the demurrers should have been overruled, the court makes the statement that: "The same general principles govern in contracts for the sale of stocks of this character as in the sale of other personal property. If the breach can be fully compensated, equity will not interfere; but when, notwithstanding the payment of the money value of the stock, the plaintiff will still lose a substantial benefit, and thereby remain uncompensated, specific performance may be decreed. * * * The doctrine has in some cases been carried to this extent that, if a contract to convey stock is clear and definite, and the uncertain value of the stock renders it difficult to do justice by an award of damages, specific performance will be decreed," and cites with approval Goodwin Gas Stove & Meter Co.'s Appeal, 117 Pa. 514, 528, 12 A. 736, 2 Am. St. Rep. 696, where the Pennsylvania court affirmed the judgment of the Philadelphia court of common pleas sustaining a master's report that contained the following statement: "The stock is not listed in the Stock Exchange of this city or elsewhere. It cannot be bought in the market. It has no market price. So far as the master is informed there have been no open sales, all transfers having presumably been inter partes. It would seem to be difficult, if not impossible, to measure in money the value of such stock. Based upon its earning power, an estimate could be made of its value, and that sum of money fixed as the damages. The remedy then would not be complete."

In the case of Safford v. Barber, 74 N. J. Eq. 352, 70 A. 371, the Chancery Court of New Jersey approved the rule as announced by the Pennsylvania court and decreed specific performance of a contract to sell shares of stock

in a commercial corporation, holding that, "Where the corporate stock to which a contract of sale relates is not procurable in the market, and its pecuniary value is not readily ascertainable, specific performance will, as a rule, be decreed."

In Manton v. Ray, 18 R. I. 672, 29 A. 998, 999, 49 Am. St. Rep. 811, from the Supreme Court of Rhode Island, the bill was for specific performance of a contract to deliver certain certificates of stock, and the court stated: "The general rule is that a court of equity will not order the specific performance of a contract for a sale of personal property because, ordinarily there is an adequate remedy at law. Chafee v. Sprague, 16 R. I. 189, 13 A. 121. Moreover, as to most kinds of personal property and many stocks, a similar purchase can be made in the market, so that a bill for specific performance is needless. But this rule is neither inflexible nor without exceptions. Cases which involve trusts are recognized exceptions. Chafee v. Sprague, supra: Appeal of Goodwin Gas Stove & Meter Co., 117 Pa. 514, 12 A. 736 [2 Am. St. Rep. 696]; Johnson v. Brooks, 93 N. Y. 337. So, also, in England, Lord Chelmsford said, in Cheale v. Kenward, 3 DeGex & J. 27, that it was settled that a bill for specific performance would lie for railway shares which are not always to be had in the market. Another exception is that a bill will lie where the loss cannot be adequately compensated by damages in an action at law. Bumgardner v. Leavitt, 35 W. Va. 194, 13 S. E. 67 [12 L. R. A. 776]; Johnson v. Brooks, 93 N. Y. 337; Treasurer v. Mining Co., 23 Cal. 390; Eckstein v. Downing, 64 N. H. 248, 9 A. 626 [10 Am. St. Rep. 404]; White v. Schuyler [N. Y.] 1 Abb. Prac. (N. S.) 300, 31 How. Prac. 38; Todd v. Taft, 7 Allen [Mass.] 371; Story, Eq. Jur. (12th Ed.) § 717; 1 Cook, Stock & S. (3d Ed.) §§ 337, 338. * * * The allegation that the value of the stock is uncertain, and not easily ascertainable, brings the case within the class of exceptional cases where there is not an adequate remedy at law. The true standing of a corporation is seldom known, outside of its own officers. A stranger would in most cases find it difficult, if not impossible, to prove the real value of its stock, unless it is one that is rated and for sale in the market. He has no access to its books; he cannot know its assets and liabilities; and, although he is willing to take the stock for a price, he might be quite unable to prove that it was worth that or any other price. No one can say that the remedy of damages, in such a case, is an adequate remedy. But there is a stronger reason for sustaining the bill. If it be assumed that the stock cannot be obtained elsewhere than of the respondent, and that he has made a valid contract for this particular stock, it is also to be assumed that he wants this stock in specie. To deny this remedy would be to deny him the substantial benefit of his contract."

In New England Trust Co. v. Abbott, 162 Mass. 148, 154, 38 N. E. 432, 434, 27 L. R. A. 271, the Massachusetts court held that a decree for specific performance of an agreement to sell shares of stock in a corporation was proper upon the ground that it clearly appeared that it would be difficult to ascertain damages, because the stock in question had not been bought and sold on the open market. Mr. Justice Morton said: "The defendant contends that the plaintiff is not entitled to specific performance, because the stock was greatly undervalued, and because the plaintiff has a remedy at law. It is evident that to remit the plaintiff to an action at law for damages would defeat the very purpose of the contract, and would not, we think, furnish an adequate remedy. No stock in the plaintiff company has ever been sold in the market, and all the shares that have been transferred have been transferred to the plaintiff, and disposed of by the directors in the manner provided. About three-fourths of the stock of the original subscribers has been thus transferred. There is no evidence that the testator ever objected to this mode of dealing with it: and we see no good reason why the plaintiff should be obliged to accept damages for which it might be difficult to lay down a clear rule, instead of performance. Western Railroad Corp. v. Babcock, 6 Metc. (Mass.) 346; Cushman v. Thayer Manuf. Jewelry Co., 76 N. Y. 365 [32 Am. Rep. 315]. The case would perhaps stand differently if the shares were bought and sold in the market, like most stocks. Adams v. Messinger, 147 Mass. 185, 17 N. E. 491 [9 Am. St. Rep. 679]."

See, also, Hills v. McMunn, 232 Ill. 488, 83 N. E. 963; Smurr v. Kamen, 301 Ill. 179, 133 N. E. 715, 22 A. L. R. 1023.

In Hyer v. Richmond Traction Co., 168 U. S. 471, 18 S. Ct. 114, 119, 42 L. Ed. 547, 551, the Supreme Court of the United States, in considering a contract for the transfer of corporate stock, says through Mr. Justice Brewer: "* * * If it be considered as a contract specifically for the transfer of stock, what is the rule in respect to actions in case of a breach thereof? If stock has a recognized market value, courts will ordinarily leave the parties to their action at law for damages for breach of the agreement to sell; but in cases where the stock has no recognized market value, is not purchasable in the market, or has a value which is not settled, but contingent upon the future workings of the corporation, equity will sometimes decree specific performance of a contract of purchase." Mutual Oil Co. v. Hills (C. C. A.) 248 F. 257; Riverside Land Co. v. Jarvis, 174 Cal. 316, 163 P. 54; Fox v. McKeown, 154 Wash. 34, 280 P. 939.

And the decisions in this and other jurisdictions are to the effect that: "Courts of law will grant relief in damages for the breach of many agreements which 'would not be regarded in equity as sufficiently definite and certain to warrant a decree for their specific performance. In this respect a greater degree of certainty is required in the terms of a contract which is to be specifically enforced in equity than is necessary in one which is to be the basis of an action at law for damages, since an action at law is founded on mere nonperformance by the defendant, and this negative act may often be established without determining all the terms of the contract with exactness. On the other hand, a suit in equity is wholly an affirmative proceeding, its object being to procure a performance by the defendant specifically, and this requires a clear and precise understanding of the terms of the contract, for they must be clear and definite before the performance thereof can be decreed.—Stay v. Tennile (1909) 159 Ala. 514, 49 So. 238 (indefinite as to time); Citronelle Turpentine Co. v. Buhlig (1913) 184 Ala. 404, 63 So. 951; Rushton v. McKee & Co. (1917) 201 Ala. 49, 77 So. 343." 65 A. L. R. 102.

And in 22 A. L. R. page 1032 et seq., there is a comprehensive annotation upon the state of the authorities with reference to the question before us.

In his original bill the complainant avers that the shares of stock represented by the certificate, which he seeks in this case, (1) are not listed on any stock exchange; that (2) their market value is not readily ascertainable, and that the value of the certificate "wrongfully withheld depends upon the value of the shares which cannot be readily ascertained." In an action for breach of contract in which his measure of damages would be the difference between the purchase price called for by the contract, and the market value of the 60 shares of stock in the St. Louis Aviation Corporation, would such action at law be adequate, for that complainant could not recover at law until he had proved the market value of the 60 shares at the time delivery was to be made? Does the bill set out facts sufficient to show that there is no practical way in which the plaintiff could discharge this burden of proof? It is urged that since the contracting parties had set an arbitrary sale price upon the shares of stock, the plaintiff is deprived of his equitable remedy. This does not meet complainant's difficulty if he sues at law. It is true that the purchase price for the 60 shares of stock is settled as of date of contract, but there still remains the question of the reasonable market value of said shares when the contract was breached. The damages to which the plaintiff would be entitled in an action at law would be the difference between the valuation placed upon the 60 shares of aviation stock and the market value at the time of breach.

Appellant further invokes the doctrine of mutuality of equitable remedy. All that this doctrine (of mutuality of equitable remedy) requires is that the situation of the parties be such that the court, in decreeing specific performance by the respondent, will have the physical power and ability to compel the complainant to perform his obligation and not be involved in complicated or extended business affairs or operations. That is to say, "In equity, however, where it is sought to secure a decree for the specific performance of a contract, the right to such relief depends upon the existence in the defendant of the right to similar relief. Generally, if this remedy is not mutual, the court, in the exercise of its discretionary powers, will refuse to assume jurisdiction to grant relief of this character to either party.—Chadwick v. Chadwick (1899) 121 Ala. 580, 25 So. 631; Tombigbee Valley R. Co. v. Fairford Lumber Co. (1908) 155 Ala. 575, 47 So. 88; Bentley v. Barnes (1911) 171 Ala. 512, 55 So. 130; Wiggins v. Sullivan (1929) 219 Ala. 186, 121 So. 731." 65 A. L. R. page 45.

The cases cited by appellant are not to the contrary. In the case of Black Diamond Coal Mining Co. v. Jones Coal Co., 200 Ala. 276, 76 So. 42, in which the acts to be performed by the complainant were of a continuous nature, this court stated the obvious fact that a court of equity could not take the responsibility of supervising the performance of obligations that extended over a long period of time; and adverted to the fact that insolvency of respondents was not averred as against the ability to collect the judgments against respondents. Electric Lighting Co. v. Mobile & S. H. Railroad Co., 109 Ala. 190, 19 So. 721, 55 Am. St. Rep. 927, was of like character or type. The cases of Chadwick v. Chadwick, 121 Ala. 580, 25 So. 631, and Poe v. Kemp, 206 Ala. 228, 89 So. 716, involved a contract in which the consideration for a conveyance was an agreement on the part of the vendee to support the vendor for life.

In his work on Equity Jurisprudence, Mr. Pomeroy noted the confusion resulting from misapprehension of the meaning of the doctrine of mutuality and expounded that doctrine in unambiguous terms (volume 5, §§ 2191 to 2194); and in section 2191, he makes the following statement in his notes: "The rule as to mutuality is not a rule of *reciprocity*— that relief will be denied unless defendant, if he had seen fit to sue instead of the plaintiff suing, would have succeeded in his suit; but, so far as it can be justified at all, is merely designed to *secure performance* on the plaintiff's part of his executory promise by the one decree in equity." 36 Cyc. 622 (2).

And thus he states the rule (5 Pom. Eq.

**306**

Jur. pp. 4923, 4924, § 2191): " 'Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract.' 3 Columbia Law Rev. 1, by Professor J. B. Ames. 'The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part.' This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality."

The averments of the original bill are that all remaining for the complainant to do in this case is to deliver to the respondent 10 shares of stock in the City Bank & Trust Company, and $160 in cash; the respondent to deliver the 60 shares of stock in the St. Louis Aviation Corporation issued by that company and sent defendant for delivery to plaintiff; that complainant avers that he is ready, able, and willing to do this. There was tender and payment into court by the complainant. In such case there is no reason why a decree of the court, ordering the respective deliveries that may be immediately, easily, and readily enforced, should not be made.

Appellant further contends that the bill does not state grounds upon which the decree of specific performance could be granted, because it shows upon its face that the contract sought to be enforced is executory. It is averred that the stock was issued in complainant's name and suit for delivery on his payment of its purchase price; that he offered to fully perform his part of the contract, and the respondent refused; that the former was ready, willing, and able to comply with the contract on his part and has made good that compliance by delivery and payment into court. This is all that is necessary to entitle the complainant to proceed for the enforcement of the contract. If complainant pleads and shows that he made such offer of compliance, that it was refused by respondent, and that at the time the bill is filed and of final decree, complainant is ready, able, and willing to perform his contract obligation, this is sufficient under our cases. Martin v. Baines, 217 Ala. 326, 116 So. 341; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; Carlisle v. Carlisle, 77 Ala. 339.

Appellant's further insistence is that tender is not sufficiently averred; no averment of a formal tender was necessary under those of refusal of acceptance and compliance by respondent. In the respects averred, the bill was sufficient. Zirkle v. Ball, 171 Ala. 568, 54 So. 1000; Forrester v. Granberry, 211 Ala. 402, 100 So. 551; Root v. Johnson, 99 Ala. 90, 10 So. 293; Stout v. Thomas, 221 Ala. 675, 130 So. 189.

Until the certificate in question is delivered to the complainant, he has not the full rights of ownership, in that he cannot deal with the property as his own and under the law. In his bill, the complainant sets out a state of facts that entitled him to this certificate of stock on compliance on his part with the contract provisions, and he alleges his readiness, ability, and willingness to comply, and that is all he seeks by the remedy of specific performance. It has been established by the general authorities that a bill for specific performance will lie to compel the delivery of a muniment of title, according to the terms of a contract. 36 Cyc. 558; 25 R. C. L. 298, § 110; 5 Pom. Eq. Jur. § 2170, note 31; Randle v. Winona Coal Co., 206 Ala. 254, 89 So. 790, 19 A. L. R. 118.

In Birmingham National Bank v. Roden, 97 Ala. 404, 11 So. 883, the complainant filed a bill to compel the defendant to register him as a stockholder on the books, or in the alternative to compel the bank to pay to the complainant the value of the stock; and the bill was retained for such equitable relief. And in Oden v. Vaughn, 204 Ala. 445, 85 So. 779, it was held that a bill in equity to compel the transfer of stock on the books of the company, in accordance with the terms of an agreement, was a proper remedy.

The original bill of complaint in this cause contains equity; both (1) upon the ground that where the value of the shares called for by the contract cannot be ascertained a contract for the sale or exchange of such corporate shares may be specifically enforced; and (2) upon the ground that the certificate so issued and sought by the plaintiff in this cause is a muniment of title, and therefore the agreement, on the part of the defendant to deliver to him, may be specifically enforced. That pleading was not subject to demurrer assigned, and the decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.