PER CURIAM.
On August 14, 1981, an application for writ of prohibition, or in the alternative, writ of mandamus to the Honorable James A. Avary, Circuit Judge of Macon County, Alabama, was filed in this Court. In its *941 application, Wallace & Wallace Chemical and Oil Company (Wallace) would have the Honorable James A. Avary (Court) desist from asserting jurisdiction over its property and be required to vacate and annul an order of July 21, 1981, and the lis pendens recorded pursuant thereto. On March 5, 1982, we denied relief, without opinion, to the petitioner. Ala., 416 So.2d 1017.
On March 19, 1982, petitioner filed an application for rehearing wherein it was pointed out, for the first time, that on December 10,1981, the Circuit Court of Macon County entered a decree in the severed portion of Segrest v. Gregg, et al., and failed to grant any relief against Wallace, but left the lis pendens untouched. Wallace claims that it is in a dilemma. It says it cannot appeal because it is not a party in the proceedings below and we have denied mandamus. The Court counters by saying that Wallace can get all the relief it is entitled to after the trial on the cross-claim in the remaining severed portion of the Segrest v. Gregg, et al. case. At this juncture, we believe that the Court’s response that Wallace can have all the relief it is entitled to on its cross-claim begs the question. The cross-claim should never have been required in the first place. We are constrained to grant Wallace’s petition.
A clear understanding of the facts in this case is crucial. In the early 1970’s, Wallace began negotiations with the City of Tuskegee, Alabama (the City), to acquire the Old Sharpe Airbase property, consisting of about 2,000 acres, to construct an oil refinery. On May 24, 1974, as a result of its efforts, Wallace was able to persuade the Industrial Development Board of the City of Tuskegee (Development Board) to give Wallace an option to buy the airbase property for the refinery project at a price of $150.00 an acre. Allegedly, the true market value of the property was approximately $750.00 an acre. The City intended the low price to be an inducement for Wallace to locate an industrial project in the Tuskegee area. The option signed by Wallace and the Development Board contained a provision that if the property was not used for industrial purposes, or if Wallace did not expend $25,000,000.00 toward the construction of a refinery, the property would revert to the Development Board.
In August 1979, Wallace indicated to the Development Board that it could not obtain the necessary financing to construct a refinery with the restrictions contained in the option. It documented its claim with letters from engineers, designers, and financiers.
On September 10, 1979, the Development Board deeded the property subject to the option to Wallace for the sum of $282,-963.75. Wallace paid the Development Board this amount. The deed of the Development Board to Wallace contained none of the restrictions Wallace’s engineers, designers and financiers had complained about. Included in the conveyance was property formerly owned by Nora Segrest and Henry Claude Segrest.
On September 13,1979, the Segrests filed suit against the City (Segrest, et al. v. Gregg, et al), claiming that neither the City nor its Development Board had authority to convey property which they had deeded to the City on June 6, 1961, because the deed conveying said property to Adometic Research Center, Inc., a Corp. (Adometic) contained a reverter clause. This clause provided in substance that in the event Adometic did not use the property for business activities directly related to the work of Adometic, the grantors would have the right to purchase said property at the best price Adometic was offered by a bona fide offeror. Adometic did not use the property for the purposes conveyed, but conveyed it to the City of Tuskegee in 1968 and the Segrests contend that said deed conveyed the property subject to the reservation in them as above described. The total amount of land involved in this litigation was 461.37 acres and (to purchase the property) the Segrests tendered a certificate of deposit in the amount of $69,250.50.
Although we do not have the entire record in this case, the facts agreed upon in the pleadings filed by counsel in this court lead us to the conclusion that we have suffi *942 cient agreed upon facts to reach a decision on what we consider the controlling issue. After the Segrest litigation was filed, Wallace was added as a defendant merely because it held the record title to what was once property held by the Segrests. The Development Board was also added as a defendant. The parties all agree that at no stage of the litigation have the Segrests attempted to make a claim to any of the property owned by Wallace other than the 461.37 acres they deeded to Adometic in 1961.
The only possible involvement of Wallace’s other lands in the Segrest litigation arises from a cross-claim filed by Wallace on September 22, 1980, and the answer thereto, filed by the Development Board and the City on the same date. A careful reading of the cross-claim and answer would indicate that this cross-claim sought to draw into issue the validity of the Board’s conveyance of property to Wallace on September 10, 1979. We say this because of the language in paragraph six of the cross-claim:
A justiciable controversy exists between Wallace on the one hand and the Board and the City on the other hand arising out of our [sic] relating to the conveyances described in Paragraphs 4 and 5 above as to the validity of said conveyances and/or the limitations, if any, upon the right of Wallace to use and develop said real estate subject to the rights, if any, of the plaintiffs as asserted in the complaint as amended.
These deeds conveyed to Wallace property other than the Segrests’.
But consider what provoked the filing of this cross-claim. The Court in its answer said it “.. . did not go on a ‘witch hunt’ to stir up this issue; the validity of the Wallace deed leaped from the pleadings and exhibits in the Segrest case .. . [it] could not be ignored with the transaction and parties already before the court.”
In its answer it went on further to say:
There are substantial issues involved in this matter, involving 2,000 acres of industrial property which is an irreplaceable asset for the City of Tuskegee and its citizens. There exists a very real possibility that that asset may be irretrievably lost, and Respondent is merely trying to minimize the possibility of such a loss.
The Court in its answer admits that the cross-claim was not the creature of Wallace, the City, or the Development Board. In the court’s answer it said:
[T]he Court instructed the defendants in the Segrest suit (the Development Board and Wallace) to file a cross-claim, putting in issue the legality of deed from the Development Board to Wallace. After several conferences with attorneys for the parties, it was agreed in substance that an existing land-use plan by Llewel-yn & Davies would be judicially imposed on the Airbase property, and that Wallace and subsequent owners would be bound by the land-use plan unless excused therefrom by the Court upon a showing of special need. (Emphasis supplied.)
The Court said in its answer that its approach to the problem was dictated because of several things, one among which was:
It has been suggested that Wallace does not intend to build the refinery at all; the refinery project is a pretext to allow Wallace to obtain allocations of imported crude oil and be assigned refining capability at an existing refinery owned by another oil company while Wallace’s Tuskegee refinery is “under construction.”
There is nothing in the record furnished us to lend support to this suggestion. Wallace stoutly denies this and calls it a rumor and an irresponsible speculation. However, all parties agree with the Court’s statement that the airbase property, with one or two exceptions, has a sad history, laced with mistakes and outright fraud, civil and criminal. *943 wanted to be allowed to await the time of the Development Board, City litigation. This intent is fairly clear from the letters and documents sent to the Court by Attorney Albert Copeland on August 1,1980. To accomplish the severance Wallace was required to give a quitclaim deed to the Seg-rest property to be placed in escrow with the Court. We have been furnished that portion of the transcript of the parties’ conversations about Wallace withdrawing from the litigation. All sides could draw comfort from certain portions of it, but for the most part, the language used is couched in terms of outright dismissal. For instance, the Court said:
*942 Several months after the cross-claim was filed, Wallace expressed the desire to be severed from the litigation involving the Segrests, because it had no substantial interest in that part of the litigation and it
*943 All right. The question now is, whether you all can tender a deed and get out of the case, and let those others fight it out.
When all was said and done, the Court entered an order on February 24, 1981, unequivocally dismissing Wallace from the Segrest suit and dismissing the cross-claim. The Court in its answer to application for prohibition states that the order was signed by an oversight and it did not intend to dismiss the cross-claim, but only intended to relieve Wallace of having to participate in the trial of the issue involving the Segrest claim against the City and the Development Board. On August 19, 1981, the Court attempted to amend its order of February 24, 1981, nunc pro tunc to clarify that the dismissal did not extend to the cross-claim filed by Wallace.
The petitioners are solely aggrieved of, and make the basis of their petition, the fact that on July 21, 1981, the Court ex mero motu, ordered the clerk of Macon County to file, in the Probate Office of Macon County, a notice of lis pendens against all the property which Wallace obtained from the Development Board and ordered that the Development Board immediately make Santo Chemical, S. A., a party to the cross-claim originally filed. The clerk of the Court on the same date filed a notice of lis pendens with the Probate Court. This action of the court was prompted by the fact that Wallace had attempted to record a mortgage in the amount of $25,000,000.00, in which Santo Chemical, S. A., was named as a mortgagee. This recording was attempted after the cross-claim had been dismissed by the Court, although it claims, erroneously. Wallace did finally record a mortgage in the amount of $2,500,000.00, to Santo Chemical, S. A. No party had asked that a lis pendens be filed in the Segrest action.
The sole issue for our resolution is whether a court may ex mero motu instruct a party to file a pleading not required by the issues in the case because the court conceives that some harm may befall non-litigants if this claim is not filed. We answer in the negative and grant the petition for prohibition and mandamus.
First, we hasten to point out that we ascribe the highest motive to the Court’s actions. All parties agree that the Old Sharpe Airbase property has had a seamy history. It is likewise true that without the land use restriction in the deed from the Development Board to Wallace, the City, indeed, could be bilked out of a large sum of money. If the court’s figures are correct, the property is worth over a million dollars and Wallace only paid a fraction of that amount. However, the duties and responsibilities of a judge are limited. In the absence of statute, he has no duty to perform until a party invokes his judgment on some legal matter. 46 Am.Jur.2d, Judges § 21 (1969). Here, the Court admits that it was trying to minimize the possibility of loss to the citizens of the City of Tuskegee. It further admits that without request from any party, it instructed the defendants in the Segrest suit to file a cross-claim putting at issue the legality of the deed from the Development Board to Wallace. There is an old saw to the effect that: You may go wrong starting out right, but you can never get right starting out wrong. Here, the Court, with the best intentions, in effect, demanded that the lawyers file a pleading which could not possibly arise from the issue framed in the Segrests’ complaint. This it cannot do. The Segrests’ complaint was that when they sold the property to Adometic, it was impressed with a provision *944 that if it was not used for the business purposes of Adometic, they would have the first refusal to purchase the property for the price offered by a bona fide offeror. This is a completely different issue from the issue raised by the cross-claim which questions the authority of the Development Board to convey property to Wallace without restricting its use for industrial purposes or requiring at least $25,000,000.00 to be spent for industrial purposes before it became Wallace’s property without an in-cumbrance.
Furthermore, we seriously doubt if there was a justiciable controversy between the City of Tuskegee and the Industrial Development Board and Wallace. They had agreed to sell the property to Wallace without any restrictions for $150.00 an acre and Wallace had agreed to purchase it for that price. Thus, we can see no real dispute between these parties. Undoubtedly, there is a lively debate in socio-economic and political circles in Tuskegee. That is evident in the pleadings before us. It appears in the Court’s statement “It has been suggested that Wallace did not intend to build a refinery at all.” We can only conclude from the record that the court became involved in the Tuskegee imbroglio. As a consequence of this inducement, it exceeded its jurisdiction.
The Court having erred in instructing the defendants to file a cross-claim, there was simply no jurisdictional basis for its order to the clerk to direct the Probate Judge to file a notice of lis pendens. Likewise, there was no jurisdictional basis for the Court to order Wallace to join Santo Chemical, S. A. Because of our holding that the original action of the Court was improper — that is, instructing Wallace to file a cross-claim — we do not reach the question of whether a court without request from any party can order notice of lis pendens. We note, however, that Code 1975, § 35-4-131 provides:
When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land, or where an application has been made to the probate judge of any county for an order of condemnation of land, or any interest therein, the person, corporation or governmental body commencing such action or proceeding or making such application shall file with the judge of probate of each county where the land or any part thereof is situated a notice containing the names of all of the parties to the action or proceeding, or the persons named as those having an interest in the land in the application for an order of condemnation, a description of the real estate and a brief statement of the nature of the lien, writ, application or action sought to be enforced. The judge of probate shall immediately file and record the notice in the lis pendens record and note on it and in the record the hour and date of the filing and the place and date of recording.
Here, there was no action pending to enforce a lien, right to or interest in land because the judge had no authority to require the cross-claim. Secondly, it would seem chat this section presupposes that a party, not the court, will file the notice with the Judge of Probate.
Because of the manner in which we resolve this case, we likewise do not reach the question of whether the Court could amend its order of February 24, 1981, nunc pro tunc on August 19, 1981. In a very recent case, we held that a Court could not amend its order to show that all parties had been dismissed when its previous order indicated that all parties had not been dismissed. Taylor Coal Company v. Pearson, 380 So.2d 779, 782 (Ala.1980).
Because the Court exceeded its jurisdiction, the writ of mandamus and writ of prohibition are due to be awarded.
If, upon advice of this decision, the Court does not vacate and amend the order of July 21, 1981, and the notice of lis pendens filed pursuant to that order, and further desist from exercising jurisdiction over petitioner’s lands as to which no lawsuit is filed or pending asserting any case or controversy with reference thereto, appropriate writs to effectuate such ends will issue upon request of the petitioners.
*945 The motion for censure and motion to strike are hereby stricken.
WRITS AWARDED CONDITIONALLY.
TORBERT, C. J., and FAULKNER, JONES, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX and SHORES, JJ., dissent.