PER CURIAM.
Nora and Henry Segrest sought specific performance of a right of first refusal contained in two recorded deeds to repurchase approximately 461.37 acres. The case was tried before the trial judge, who made the following findings, among others:
The Segrests in 1961 by two deeds conveyed the suit property to Atomedic Research Center, Inc. (Atomedic). The Seg-rests did not want to sell the property, but were persuaded to do so (a) because of their feeling of civic responsibility to allow the community to develop economically and (b) because Atomedic was a non-profit corporation with a humanitarian mission, the latter being a significant motivating factor. Each deed from the Segrests to Atomedic contained a covenant or reservation which gave the Segrests the right of first refusal should the property be later sold or conveyed “other than to a person, firm or corporation directly related to the work of Atomedic.” These covenants were a material part of the consideration in each deed.
*923 Atomedic was a non-profit corporation organized for the purpose of fabricating modular emergency hospitals. The mayor and city council actively supported and promoted the Atomedic project because of its positive impact on the community.
The Atomedic venture failed in 1963, and the Segrest property was conveyed to the City of Tuskegee by a deed which contained verbatim the covenant which was contained in the deeds from the Segrests to Atomedic, making the covenant applicable to the City. The trial judge specifically found that the City was obligated to comply with the terms of the covenant.
He noted that, subsequent to 1963, the City of Tuskegee has consistently sought to attract industry to the Tuskegee area and, to induce industry, has offered land at $150 an acre, which land included the Segrest property. In 1974, the City conveyed a part of the Segrest land to its Industrial Development Board for a hydroponics business and another parcel of the Segrest property was conveyed for $150 per acre to the Industrial Board for use as an aircraft conversion business. Both of these ventures failed. These two parcels were then purchased by Wallace Chemical and Oil Corporation (Wallace) at fair market value.
Also, in 1974, the City conveyed to its Industrial Board some 1,800 acres which included the remaining Segrest property. (This deed was not recorded until after this suit was filed.) In conjunction with the 1974 deed, the Industrial Development Board granted Wallace an option to purchase all of the property for $150 per acre.
The court found that the Segrests did not know about the Wallace plan to develop a refinery on the Segrest property. Within a two-week period in late August or September, 1979, Wallace offered to buy and the Industrial Development Board agreed to sell the property, including most of the Seg-rest property for $150 per acre. Wallace paid the Board that amount and received a deed. This suit was filed at the same time.
The court found that at no time did the City of Tuskegee, Wallace, or the Industrial Development Board, or anyone on their behalf, comply or attempt to comply with the covenant in the deed from Atomedic to the City granting to the Segrests the right of first refusal, although the existence of the covenant was known to all the parties.
The Court went on to find that, since Atomedic was dissolved and is no longer in business, there can never be “business activity directly related to the work of Atomedic Research Center, Inc.,” as contemplated by the covenant.
Following these findings, the Court held that the claims of the Segrests as to 50 acres of hydroponic property and the approximately 13.5 acres of the aircraft conversion project were barred by laches. As to these two tracts, the judge held that the Segrests “sat on their rights.”
With regard to the balance of the property of some 400 acres, the court held that the covenant containing a right of first refusal reserving unto the Segrests a right of repurchase was legal and binding upon the City of Tuskegee, that it was a covenant running with the land, and that it was binding upon both the City and its successors in title. The court found that the covenant was carefully and narrowly drawn and that the sale by the City to the Industrial Development Board without first offering it to the Segrests for repurchase violated the covenant.
The court then found that the intention of the parties was that the right of repurchase would not apply to sales and conveyances for use in a non-profit hospital and non-profit medical related activities and other activities directly related to non-profit activity. To this end, the court determined, despite its finding that the covenant had been violated by the City, that instead of granting specific performance to the Segrests for repurchase of the property, it. would reform the language of the covenant. Accordingly, the court ordered reformation of the covenant to provide that only in the event the City of Tuskegee desires to sell the property other than to a person or firm for use in a non-profit hospital or medical related facility for activities directly related *924 to such non-profit activities, then the Seg-rests would have their right of repurchase upon notice.
The court then determined that the title to the Segrest property was divested from Wallace (which had previously tendered into court a deed to all the Segrest property conveying the same to the Industrial Development Board) and was vested in the City of Tuskegee, subject to the covenant (as reformed by the court).
The court refused specific performance, although it agreed with the Segrests’ contention that the City had breached the covenant and notwithstanding the Segrests’ tender of $69,205.50 as the repurchase price of the property at $150 per acre, which is the price for which all of the property was sold.
The City and other defendants appealed from that part of the court’s decree which divested title of the Segrest property from Wallace and vested title in the City of Tuskegee, and that part of the decree continuing to make the property subject to the Segrests’ right of repurchase. The defendants also object to the court’s failure to award attorneys fees. The trial court reserved that issue until “all appeals have become final or the time for appeal has expired.”
The Segrests filed a cross-appeal from the portions of the decree which re-vested title to the. property in the City instead of ordering it conveyed to them. We reverse and remand this portion of the decree with directions. The Segrests also appealed from that portion of the decree which held that their claims to the hydroponic project property and the aircraft conversion project property, approximately 63.5 acres, were barred by laches.
The covenant in issue, which was contained in two Segrest deeds, in the option agreement running from Atomedic to the City of Tuskegee and, in the deed from Atomedic to the City, is as follows:
“In the event the grantee desires to sell or convey the above described property, or any part thereof, other than to a person, firm or corporation for use in a business activity directly related to the work of Atomedic Research Center, Inc., a corporation, then, in such event, the grantor, H.C. Segrest, Jr., shall have the right to purchase said property at the best price which the grantee is at the time offered for the said property by a bona fide offer- or. The grantee is to give the grantor written notice of the offer, the amount of the offer, and the name of the offeror. The grantor is to have a reasonable time after said notice by the grantee in which to exercise his right to purchase said property. If the grantor, H.C. Segrest, Jr., is dead at the time the grantee desires to sell the said property, then the grantor, Nora M. Segrest, shall have the same right as,to the purchase of said property as given to the grantor above.”
It is undisputed and, in fact, it was stipulated that no notice was ever given to the Segrests of any sale of any of the property involved in this case up through the date of the suit. The Segrests argue that title to the property reverted to them when the covenant was breached, but do not insist upon this holding. Instead, they are willing to accept specific performance of the agreement and have tendered into court $150 an acre for which the property was sold. Because this is the position they took in the trial court, we do not address the issue of whether or not title reverted to the Segrests upon breach of the covenant. Because of the peculiar facts of this case, we do, however, reverse the trial court decree denying specific performance of the agreement to give the Segrests an opportunity to repurchase the land at the price offered by a third person. While it is true, generally, that specific performance rests in the discretion of the court, that discretion may not be exercised in an arbitrary manner. Rushton v. McKee & Co., 201 Ala. 49, 77 So. 343 (1917). See, also, General Securities Corp. v. Welton, 223 Ala. 299, 135 So. 329 (1931). The Segrests had an option which was clearly expressed to repurchase the land. The City and its successors in title had notice of this right, and as the court below held, it was a covenant running *925 with the land. To deny their prayer for specific performance under the undisputed facts of this case would be inequitable and unjust. Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818 (1919).
The trial court’s decree in denying specific performance is reversed and, the cause is remanded with directions to the trial court to enter an order vesting title in the Segrests in consideration of the sum heretofore tendered .by the Segrests ($69,-205.50).
Under the undisputed evidence in this case, the Segrests were not guilty of laches in bringing their claim. The City, in fact, conceded that there was no justification for treating the 50 aeres and 13.5 acres any differently from the 400-acre tract. The first time the City conveyed any portion of the property to any entity other than “charitable, scientific or educational” purposes was 1974. Suit was brought in 1979. The other 400 acres was conveyed after suit was filed. It is difficult to understand the City’s claim of laches, when it admits that it breached its agreement to notify the Seg-rests of the sale in 1974 to the Industrial Development Board for the hydrdponic and aircraft conversion projects. We hold that the trial court erred in holding that the Segrests’ claims to these parcels were barred by laches. Woodlawn Realty & Development Co. v. Hawkins, 186 Ala. 234, 65 So. 183 (1914).
Finally, we hold that the trial court erred in reforming the covenant. There is simply no evidence that the agreement as expressed in the deeds failed to express the intention of the parties. To the contrary, the evidence shows that the same accurately reflected those intentions. The language is clear and specific and simply says that, if the City desires to sell the land to any entity other than to an entity for use in business activity directly related to the work of Atomedic, the Segrests have a right to buy it back. The court was not justified in rewriting this agreement to say that the Segrests had a right to repurchase only if the City desired to sell to an entity other than one for use in a non-profit hospital or medical-related facility. That is simply not the agreement made by the City and the Segrests, and the evidence establishes that the agreement expressed in the deeds reflected the intention of the parties. In addition, neither party to this law suit sought reformation of the agreement. Reformation was not an issue which was tried. The court, therefore, erred in reforming the agreement. Ex parte Wallace & Wallace Chemical & Oil Corp., 417 So.2d 940 (Ala.1982).
We hold:
(1) The trial court erred in holding that laches barred the Segrests’ claim to the 50 acre and 13.5 acre parcels;
(2) The trial court erred in denying specific performance of the repurchase agreement as to the entire parcel;
(3) The trial court was correct in vesting title in the City and divesting Wallace, which does not complain of that ruling;
(4) The trial court erred in reforming the agreement;
(5) The trial court is affirmed in retaining the issue of attorney fees until after the appeals have been exhausted.
The judgment appealed from is affirmed in part, reversed in part, and remanded with directions to the trial court to enter a decree vesting title to the entire property, the subject of this suit, in the Segrests in exchange for the sum tendered and to make such determination as the facts warrant with regard to attorney fees.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED, WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.